**PRODIGY COMMUNICATIONS CORP., Petitioner,**

v.

**AGRICULTURAL EXCESS & SUR-PLUS INSURANCE COMPANY, n/k/a Great American E & S Insurance Company and Great American Insurance Company, Respondents.**

No. 06–0598.

Supreme Court of Texas.

Argued April 1, 2008.

Decided March 27, 2009.

Werner A. Powers and Charles C. Keeble Jr., Haynes & Boone, LLP, Dallas, for Petitioner.

J. Richard Harmon, Jo Allison Stasney, Wade Caven Crosnoe, Thompson Coe Cousins & Irons, LLP, Dallas, Paul F. Matousek, Joseph J. Borders, Walker Wilcox Matousek, LLP, Chicago, IL, for Respondents.

Chief Justice JEFFERSON delivered the opinion of the Court, joined by Justice O'NEILL, Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA, and Justice GREEN.

In *PAJ, Inc. v. The Hanover Insurance Co.*, 243 S.W.3d 630, 636–37 (Tex.2008), we held that "an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay." *PAJ* involved an occurrence-based commercial general liability ("CGL") policy with a prompt-notice provision that required the insured to notify the insurer of "an occurrence or an offense that may result in a claim 'as soon as practicable.'" *Id.* at 631–32. Noting that "the timely notice provision was not an essential part of the bargained-for exchange under PAJ's occurrence-based poli-

cy," we held that PAJ's untimely notice did not defeat coverage in the absence of prejudice to the insurer. *Id.* at 636–37.

Today, we decide whether *PAJ's* notice-prejudice rule applies to a claims-made policy when the notice provision requires that the insured, "as a condition precedent" to its rights under the policy, give notice of a claim to its insurer "as soon as practicable ..., but in no event later than ninety (90) days after the expiration of the Policy Period or Discovery Period." The parties dispute whether notice of the claim was given "as soon as practicable" but agree that the insured gave notice within the ninety-day cutoff period. The insurer also admits that it was not prejudiced by the delayed notice.

For the reasons explained below, we conclude that "notice as soon as practicable" was not an essential part of the bargained-for exchange under the claims-made policy at issue here. Following *PAJ*, we hold that, in the absence of prejudice to the insurer, the insured's alleged failure to comply with the provision does not defeat coverage. *See id.* Because the court of appeals held otherwise, 195 S.W.3d 764, 768, we reverse its judgment, render judgment that the insurer may not deny coverage based on the fact that notice was not given "as soon as practicable," and remand the remaining issues to the trial court.

# I

## Factual Background

Prodigy Communications merged with FlashNet Communications in May 2000. At the time of the merger, FlashNet was insured under a claims-made "Directors' and Officers' Liability Insurance Policy Including Company Reimbursement" issued by Agricultural Excess & Surplus

Insurance Company (AESIC).[1] In exchange for a $19,519 premium, the policy covered losses resulting from certain "claims first made" against FlashNet[2] and its directors and officers during the policy period of March 16, 2000 to May 31, 2000. In anticipation of its merger with Prodigy, FlashNet purchased a 3-year "Discovery Period" which, in exchange for a $93,750 premium, extended coverage under the policy to any "claims first made" against the Insureds between May 31, 2000 and May 31, 2003.[3]

The policy contained the following amended[4] "notice of claim" provision:

> The [Insureds] shall, as a condition precedent to their rights under this Policy, give the Insurer notice, in writing, as soon as practicable of any Claim first made against the [Insureds] during the Policy Period, or Discovery Period (if applicable), but in no event later than ninety (90) days after the expiration of the Policy Period, or Discovery Period, and shall give the Insurer such informa-

tion and cooperation as it may reasonably require.[5]

On November 28, 2001, FlashNet was named as a defendant in a class-action securities lawsuit (commonly referred to as the "IPO litigation"). The underlying FlashNet lawsuit constituted a "Securities Claim first made against [FlashNet]" "during the ... Discovery Period" of the policy, as described in the insuring agreement added by Policy Endorsement 16. Prodigy was served with a copy of the complaint on June 20, 2002 and first notified AESIC of the FlashNet lawsuit in a letter dated June 6, 2003. Apparently assuming that AESIC was already aware of the underlying lawsuit, the June 6 letter requested AESIC's consent to a proposed settlement agreement of the claims brought against FlashNet, rather than purporting to provide the initial notice of the claim.

By letter dated June 18, 2003, AESIC denied coverage on the ground that the June 6 letter did not comply with the policy's notice requirements.[6] In re-

---

1. Respondent Great American Insurance Company's Executive Liability Division was responsible for underwriting and claims administration of D & O policies issued by AESIC, including the one issued in this case.

2. With respect to claims against FlashNet itself, coverage was provided solely by operation of Endorsement 16, which added the following insuring agreement: "if, during the Policy Period or the Discovery Period, any Securities Claim is first made against the Company for a Wrongful Act the Insurer will pay on behalf of the Company all Loss which the Company is legally obligated to pay."

3. As prominently stated on the declarations page, the policy "D[ID] NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND THOSE INSURED UNDER THE POLICY." This is standard for D&O policies. *See* 3 Rowland H. Long, The Law of Liability Insurance § 12A.05[1] (2006).

4. The original "notice of claim" provision, found in section VII of the policy, required

that the Insureds "as a condition precedent to their rights ... give the Insurer notice ... as soon as practicable ... but in no event later than ninety (90) days *after such Claim is made* ...."

5. As noted above, the Discovery Period expired on May 31, 2003. Thus, the notice provision required that notice of a claim be given "as soon as practicable ..., but in no event later than" August 29, 2003.

6. AESIC's letter stated in part:

> As I advised you in telephone conversations on June 9, 2003 and June 11, 2003, AESIC is not participating in the [IPO litigation] and has not signed the relevant agreements. I also advised you that AESIC had not received any written notice of any lawsuit involving FlashNet Communications, Inc. In fact, your June 6, 2003 letter appears to be the first notice of this matter to AESIC. However, such notice was not in compliance with the [Policy's requirements] (including Section VII) ["The Notice of Claim"

sponse, Prodigy provided AESIC with formal written notice of the claim on June 26, 2003. Along with this notice, Prodigy attached a letter asserting that notice was timely because it had been sent within ninety days of the expiration of the Discovery Period. Despite Prodigy's efforts, AESIC never retreated from its no coverage stance.

## II

## Procedural Background

Prodigy sued AESIC, seeking a declaration that Prodigy was contractually entitled to coverage. Prodigy also asserted several extra-contractual claims alleging, among other things, that AESIC violated certain Insurance Code provisions as an unauthorized surplus lines insurer and was thus liable to Prodigy for the full amount of coverage. AESIC moved for summary judgment arguing that Prodigy did not satisfy the policy's condition precedent that notice of a claim be given "as soon as practicable." Prodigy filed a cross-motion for summary judgment. The trial court denied Prodigy's motion and granted AESIC's motion in part, ruling that Prodigy failed to comply with the condition precedent of timely notice and that this failure "avoids coverage, with or without prejudice to AESIC." AESIC and Great American Insurance Company then moved for summary judgment on the remaining Insurance Code issues, and the trial court granted a final summary judgment in their favor.

The court of appeals affirmed, holding that: (1) Prodigy was required to give notice "as soon as practicable," even though the policy allowed notice within ninety days after the expiration of the discovery period; (2) notice given almost one year after the filing of the lawsuit against the insured was not "as soon as practicable" as a matter of law; (3) AESIC was not required to prove that it was prejudiced by Prodigy's late notice; and (4) Insurance Code provisions did not prevent AESIC from enforcing the policy's notice provision. 195 S.W.3d 764, 766–69. Prodigy petitioned this court for review on the issues of late notice and Insurance Code violations. We granted the petition. 51 Tex. Sup.Ct. J. 292 (Jan. 14, 2008).

## III

## Discussion

■ We must decide whether, under a claims-made policy, an insurer can deny coverage based on its insured's alleged failure to comply with a policy provision requiring that notice of a claim be given "as soon as practicable," when (1) notice of the claim was provided before the reporting deadline specified in the policy; and (2) the insurer was not prejudiced by the delay.

As noted earlier, we recently held in *PAJ*, that an "insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay." 243 S.W.3d at 636–37. In reaching that conclusion, we followed our holding in *Hernandez* that "an immaterial breach does not deprive the insurer of the benefit of the bargain and thus cannot relieve the insurer of the contractual coverage obligation." *PAJ*, 243 S.W.3d at 631 (citing *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex.1994)). Prodigy argues that, even assuming it breached the policy's requirement that notice of a claim must be given "as soon as practicable," under our holding

provision], which are a condition precedent to any rights under the Policy. Furthermore, both the Policy Period and Discovery

Period expired prior to your June 6, 2003 letter. Under the circumstances there is no coverage for this matter under the Policy.

in *PAJ*, that breach was immaterial and cannot defeat coverage given AESIC's admitted lack of prejudice. *See id.* AESIC responds that our holding in *PAJ* does not control the outcome of this case for several reasons.

First, unlike the *PAJ* policy, this one states unambiguously that the insured's duty to give "notice, in writing, as soon as practicable" is a "condition precedent" to coverage. Importantly however, our holding in *PAJ* did not rest on the distinction between conditions and covenants. *See id.* at 633 (noting that in *Hernandez* "[w]ithout distinguishing between covenants and conditions or classifying the exclusion as one or the other, we concluded that the insured's breach of the settlement-without-consent provision was immaterial and thus the insurer could not avoid liability") (citing *Hernandez*, 875 S.W.2d at 693); *see also id.* at 633 n. 2 (noting that "the courts in many of the cases we cited made no attempt to classify the policy provisions as either covenants or conditions, nor did they even employ those terms"). Instead, we followed our reasoning in *Hernandez*, where we applied "'fundamental principle[s] of contract law,'" to hold "that when one party to a contract commits a material breach, the other party's performance is excused." *Id.* at 633 (quoting *Hernandez*, 875 S.W.2d at 692). We noted that one consideration in determining the materiality of a breach is "'the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance.'" *Id.* (quoting *Hernandez*, 875 S.W.2d at 693 (citing RESTATEMENT (SECOND) OF CONTRACTS § 241(a) (1981))). Thus, while the Prodigy policy describes the notice provision as a "condition precedent," we must go further to determine whether prejudice is, or is not, required.

This brings us to AESIC's second reason for distinguishing this case from *PAJ*. Unlike the occurrence-based policy in *PAJ*, the policy at issue here is a "claims-made" policy. According to AESIC, timely notice is always inherent to, and an essential part of, the bargained-for exchange in a claims-made policy. In *PAJ*, we recognized a "critical distinction" between the role of notice in claims-made policies and the role of notice in occurrence policies and concluded that timely notice was not an essential part of the bargained-for exchange in PAJ's occurrence-based policy. 243 S.W.3d at 636. In reaching this conclusion, we were persuaded by the Fifth Circuit's explanation that "'[i]n the case of an "occurrence" policy, any notice requirement is subsidiary to the event that triggers coverage.'" *Id.* (quoting *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658 (5th Cir.1999)).

To determine whether "notice as soon as practicable" is an essential part of the bargained-for exchange in the claims-made policy at issue here, it is helpful to review the basic distinctions between occurrence and claims-made policies and the different types of notice requirements associated with each.

As one treatise explains:

D&O insurance policies today are invariably written on a "claims-made" basis, which means that the policy only covers those claims first asserted against the insured during the policy period. This limitation appears in the insuring clauses. This coverage differs from "occurrence" type coverage, written for most casualty insurance, which covers only claims arising out of occurrences happening within the policy period, regardless of when the claim is made.

3 ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE § 12A.05[3] (2006). Thus, the

main difference between these two types of policies is that a "claims-made" policy provides unlimited retroactive coverage and no prospective coverage, while an "occurrence" policy provides unlimited prospective coverage and no retroactive coverage. 20 ERIC MILLS HOLMES, HOLMES' APPLEMAN ON INSURANCE § 130.1(A)(1) (2d ed. 2002) ("HOLMES' APPLEMAN ON INSURANCE 2D"); *see also* 1 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 1.5 (3d ed. 2008) ("COUCH ON INSURANCE 3D").

For the insurance company, the primary advantage of a claims-made policy "is the limitation of liability to claims asserted during the policy period." 20 HOLMES' APPLEMAN ON INSURANCE 2D § 130.1(A)(1). This allows insurers "to calculate risks and premiums with greater precision." *Id.*

Furthermore, "the elimination of exposure to claims filed after the policy expiration date enables liability insurance companies to issue the claims made policies at reduced premiums." *Id.*

■■■ Both occurrence policies and claims-made policies tend to have a requirement that notice of a claim be given to the insurer promptly, or "as soon as practicable." *See* 13 COUCH ON INSURANCE 3D § 186:13; *see also Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 406 Mass. 862, 551 N.E.2d 28, 29 (1990). Unlike occurrence policies, however, some claims-made policies (often called "claims-made-and-reported" policies) have an additional requirement that the claim be reported to the insurer within the policy period or within a specific number of days thereafter.[7] *See, e.g., Burns v. Int'l Ins. Co.*, 929

7.  It should be noted that "[m]any courts fail to distinguish between claims-made and claims-made-and-reported policies, and simply speak in broad terms of 'claims-made' policies." *Textron, Inc. v. Liberty Mut. Ins. Co.*, 639 A.2d 1358, 1362 n. 2 (R.I.1994). As one court has explained:

> [T]he only true mark of a "claims made" [policy] is that it provides coverage for any claim first asserted against the insured during the policy period, regardless of when the incident giving rise to the claim occurred. Whether reporting to the insurer [i]s also a condition of coverage depends on the terms of the specific policy.
> In this regard, there is a distinction between a "claims made" policy and a "claims made and reported" policy: "Whereas the former requires only that a claim be made within the policy period, the latter also requires that the claim be reported to the insurance company within the policy period."

*Jones v. Lexington Manor Nursing Ctr., L.L.C.*, 480 F.Supp.2d 865, 868 (S.D.Miss.2006)(quoting *Chicago Ins. Co. v. Western World Ins. Co.*, No. Civ.A. 3–96–CV–3179R., 1998 WL 51363, at *3 (N.D.Tex. Jan.23, 1998) (mem.)); *see also Pension Trust Fund for Operating Eng'rs v. Federal Ins. Co.*, 307 F.3d 944, 955–56 & n. 6 (9th Cir.2002)(holding that claims-made policy

that required insured to provide notice of claims " 'as soon as practicable' " but "did not require that the claims be reported within the policy period, or even within a specific number of days thereafter" could "[not] be treated as a claims-made-and-reported policy"); *Textron*, 639 A.2d at 1361 n. 2 (noting that "[a]bsent a provision requiring notice within a set period after policy expiration, standard claims-made policies 'implicitly allow * * * reporting of the claim to the insurer after the policy period, as long as it is within a reasonable time' ") (quoting 2 ROWLAND LONG, THE LAW OF LIABILITY INSURANCE, § 12A.05[3A] at 40 (Supp.1991)).

Although Prodigy's policy is labeled a "claims-made policy," its requirement that notice of a claim be given "as soon as practicable during the Policy Period, ... but in no event later than ninety (90) days after the expiration of the Policy Period, or Discovery Period" is characteristic of a "claims-made-and-reported policy". *See* 3 ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE § 12A.05 [3A] (2006) ("The distinction between 'claims made' and 'claims made and reported' policies is not necessarily apparent on the face of the policies, since disclosure regulations generally require only that the legend 'claims made' be placed on the policy. The distinction is typically evident in the notice of claims provision of the policy.").

F.2d 1422, 1423 (9th Cir.1991) (claims to be reported within sixty days following policy termination); *Zuckerman v. Nat'l Union Fire Ins. Co.*, 100 N.J. 304, 495 A.2d 395, 396–97 (1985)(claims to be made against insured and reported to insurer during policy period).

As courts and commentators have recognized, the different kinds of notice requirements when found in a claims-made policy serve very different purposes.[8] *See, e.g.,* 13 COUCH ON INSURANCE 3D § 186:13 ("As a general statement, the prompt notice of claim requirement and the 'claims made' within the policy period requirement serve such different purposes, and are of such different basic character, that the principles applied to one should have little or nothing to do with the principles applied to the other."); *Chas. T. Main*, 551 N.E.2d at 29 (noting that "[t]he purposes of the two types of reporting requirements differ sharply").

■ In a claims-made policy, the requirement that notice be given to the insurer "as soon as practicable" serves to "maximiz[e] the insurer's opportunity to investigate, set reserves, and control or participate in negotiations with the third party asserting the claim against the insured." 13 COUCH ON INSURANCE 3D

§ 186:13, *see also Chas. T. Main*, 551 N.E.2d at 29. By contrast, the requirement that the claim be made during the policy period "is directed to the temporal boundaries of the policy's basic coverage terms.... [This type of notice] is not simply part of the insured's duty to cooperate, but defines the limits of the insurer's obligation, and if there is no timely notice, there is no coverage." 13 COUCH ON INSURANCE 3D § 186:13. Similarly, a notice provision requiring that a claim be reported to the insurer during the policy period or within a specific number of days thereafter "define[s] the scope of coverage by providing a certain date after which an insurer knows it is no longer liable under the policy." *Resolution Trust Corp. v. Ayo*, 31 F.3d 285, 289 (5th Cir.1994); *see also Chas. T. Main*, 551 N.E.2d at 29–30 (noting that "fairness in rate setting is the purpose of a requirement that notice of a claim be given within the policy period or shortly thereafter" and therefore this type of notice requirement "is of the essence in determining whether coverage exists" in a claims-made policy).[9]

The role of notice in claims-made policies has been described as follows:

> Claims made or discovery policies are essentially reporting policies. *If the*

**8.** As one treatise notes:
> Courts too often speak broadly of the [claims-made] policy's "notice requirement," without specifying which requirement is at issue, and make broad pronouncements about the effect of noncompliance with the unspecified "notice requirement." Alternatively, courts may speak in terms of the insured's "untimely notice," and proceed to determine the effect of the untimeliness, without specifying which of the notice requirements is at issue.
> 13 COUCH ON INSURANCE 3D § 186:13.

**9.** *See also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Willis*, 296 F.3d 336, 343 (5th Cir.2002) ("The purpose of claims-made poli-

cies, unlike occurrence policies, is to provide *exact notice periods that limit liability to a fixed period of time* 'after which an insurer knows it is no longer liable under the policy, and for this reason such reporting requirements are strictly construed.' ")(emphasis added)(quoting *Resolution Trust Corp. v. Ayo*, 31 F.3d 285, 289 (5th Cir.1994)); *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1330 (5th Cir.1994) (noting that "[t]he notice requirements in claims made policies allow the insurer to 'close its books' on a policy at its expiration and thus to 'attain a level of predictability unattainable under standard occurrence policies' ") (quoting *Burns v. Int'l Ins. Co.*, 709 F.Supp. 187, 191 (N.D.Cal.1989), *aff'd*, 929 F.2d 1422 (9th Cir.1991)).

*claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay*; if the claim is not reported during the policy period, no liability attaches. Claims made policies require notification to the insurer to be within a reasonable time. *Critically, however, claims made policies require that that notice be given during the policy period itself.*

20 HOLMES' APPLEMAN ON INSURANCE 2D § 130.1(A) 1 (emphasis added). Because the requirement that a claim be reported to the insurer during the policy period or within a specific number of days thereafter is considered essential to coverage under a claims-made-and-reported policy, most courts have found that an insurer need not demonstrate prejudice to deny coverage when an insured does not give notice of a claim within the policy's specified time frame.[10]

In *Main*, the Supreme Judicial Court of Massachusetts noted the distinction between the "as soon as practicable" and "within the policy year" notice requirements and concluded that, in a claims-made policy, noncompliance with the latter would defeat coverage regardless of preju-

dice to the insured. 551 N.E.2d at 30. The court explained:

> The purpose of a claims-made policy is to minimize the time between the insured event and the payment. For that reason, the insured event is the claim being made against the insured during the policy period and the claim being reported to the insurer within that same period or a slightly extended, and specified, period. If a claim is made against an insured, but the insurer does not know about it until years later, the primary purpose of insuring claims rather than occurrences is frustrated. Accordingly, the requirement that notice of the claim be given in the policy period or shortly thereafter in the claims-made policy is of the essence in determining whether coverage exists. Prejudice for an untimely report in this instance is not an appropriate inquiry.

*Id.* The court then concluded that a statutory notice-prejudice requirement "applies only to the 'as soon as practicable' type of notice and not to the 'within the policy year' type of reporting requirement which is contained in the policy under review in this case and was not met." *Id.*

---

**10.** *See, e.g., Chas. T. Main*, 551 N.E.2d at 30; *Matador Petroleum Corp.*, 174 F.3d at 656, 658; *Lexington Ins. Co. v. St. Louis Univ.*, 88 F.3d 632, 634–35 (8th Cir.1996)(where claims-made policy provided that the insured " 'shall give' [insurer] notice of each claim 'as soon as practicable,' and in any event, *'during the period of this Policy,'* " insurer "need not prove prejudice to deny coverage if the [insured] failed to report the [claim] *within the policy term* ")(emphasis added); *DiLuglio v. New England Ins. Co.*, 959 F.2d 355, 356, 359 (1st Cir.1992) (where policy provided that insurance company would pay " 'any claim or claims ... first made against the Insured and reported to the Company during the policy period' " "prejudice may be presumed *where notice is not provided within the policy period* ")(emphasis added); *Nat'l Union Fire Ins.*

*Co. v. Talcott*, 931 F.2d 166, 168 (1st Cir. 1991) (same); *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1423–25 (9th Cir.1991) (notice-prejudice rule did not apply to claims-made policy that covered "claims made against the insureds during the policy period ... notice of which claim is received by the company within sixty days following the termination of the policy period"); *Esmailzadeh v. Johnson and Speakman*, 869 F.2d 422, 424 (8th Cir.1989); *Zuckerman v. Nat'l Union Fire Ins. Co.*, 100 N.J. 304, 495 A.2d 395, 396–97, 405–06 (1985) (where policy covered "claims first made against the insured and reported to the [Insurer] during the policy period" insurer was not required to demonstrate prejudice to deny coverage based on notice given ten months after policy expired).

Similarly, in *T.H.E. Insurance Company v. P.T.P. Inc.,* 331 Md. 406, 628 A.2d 223, 228 (1993), the Maryland Court of Appeals held that a statutory notice-prejudice requirement did not apply to the insurer's denial of coverage under a claims-made policy for a claim made and reported after the policy had expired. The court emphasized that the insurer was not attempting to "deny coverage because of an alleged material failure to perform a covenant to give notice, or to satisfy a policy provision that might be phrased as a condition that must be satisfied to prevent the loss of coverage that otherwise would apply." *T.H.E. Ins. Co.,* 628 A.2d at 227. Rather, the court explained, the extended reporting period under the policy had expired before P.T.P. reported the claim, and therefore the notice-prejudice requirement "could no more revive the original policy to cover [the claim] than [it] could reopen an occurrence policy to embrace a claim based on an accident that happened after the end of the policy period." *Id.* The court observed that the insurer would be required to demonstrate prejudice, however, to deny coverage based on the policy's provision requiring the insured to give notice of a claim " 'as soon as practicable,' " assuming that the claim had been made and reported within the extended reporting period. *Id.* at 227 n. 7.

■ We agree with this analysis. In a claims-made policy, when an insured gives notice of a claim within the policy period or other specified reporting period, the insurer must show that the insured's noncompliance with the policy's "as soon as practicable" notice provision prejudiced the insurer before it may deny coverage. Here, it is undisputed that Prodigy gave notice of the FlashNet lawsuit before the ninety-day cutoff. Even assuming that Prodigy did not give notice "as soon as practicable," AESIC was not denied the benefit of the claims-made nature of its policy as it could not "close its books" on the policy until ninety days after the discovery period expired. *See F.D.I.C. v. Mijalis,* 15 F.3d 1314, 1330 (5th Cir.1994) (noting that "the notice requirements in claims made policies allow the insurer to 'close its books' on a policy at its expiration and thus to 'attain a level of predictability unattainable under standard occurrence policies' ")(quoting *Burns v. Int'l Ins. Co.,* 709 F.Supp. 187, 191 (N.D.Cal. 1989), *aff'd,* 929 F.2d 1422 (9th Cir.1991)); *see also* 20 HOLMES' APPLEMAN ON INSURANCE 2D § 130.1(A)1 ("The *essence* ... of a claims made policy is notice to the insurance carrier *within the insurance policy period.*") (emphasis added).

Accordingly, we conclude that Prodigy's obligation to provide AESIC with notice of a claim "as soon as practicable" was not a material part of the bargained-for exchange under this claims-made policy. *See Hernandez,* 875 S.W.2d at 693 ("In determining the materiality of a breach, courts will consider, among other things, the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance.") (citing RESTATEMENT (SECOND) OF CONTRACTS § 241(a) (1981)). As AESIC has admitted that it was not prejudiced by the delay in receiving notice, it could not deny coverage based on Prodigy's alleged failure to provide notice "as soon as practicable." *See PAJ,* 243 S.W.3d at 636–37.

**IV**

**Conclusion**

In a claims-made policy, when an insured notifies its insurer of a claim within the policy term or other reporting period that the policy specifies, the insured's failure to provide notice "as soon as practicable" will not defeat coverage in the

absence of prejudice to the insurer.[11] Accordingly, we reverse the court of appeals' judgment, render judgment that AESIC cannot deny coverage because of Prodigy's alleged failure to give notice "as soon as practicable," and remand the remaining issues to the trial court. TEX. R.APP. P. 60.2(d).

Justice WAINWRIGHT delivered a concurring opinion.

Justice JOHNSON delivered a dissenting opinion, joined by Justice HECHT and Justice WILLETT.

Justice WAINWRIGHT, concurring.

In *PAJ, Inc. v. Hanover Insurance Co.*, we held that "an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay." 243 S.W.3d 630, 636–37 (Tex.2008). That holding largely controls the outcome of this case. I joined the dissent in *PAJ. See id.* at 637 (Willett, J., dissenting). And I agree with the dissent's assertion today that contracts should be enforced in accordance with the express terms and conditions to which the parties agreed, including notice provisions that are conditions precedent. *See* 288 S.W.3d 383 (Johnson, J., dissenting). It is concerning that the Court's opinion in *PAJ* would likely thwart even the enforcement of a policy's notice requirement that explicitly states, "time is of the essence." Nevertheless, *PAJ* is now the law of the land, and I join in the Court's opinion today for that reason.

Justice JOHNSON, joined by Justice HECHT and Justice WILLETT, dissenting.

Today the Court rewrites an unambiguous insurance contract and changes the agreement of the parties. It holds that AESIC cannot deny coverage to Prodigy even if Prodigy breached explicit contract language making it a condition precedent for it to give notice of the claim "in writing, as soon as practicable." The Court does so by departing from well-established insurance policy construction rules as well as by failing to adhere to the choice made by the Court in *Members Mutual Insurance Co. v. Cutaia*, 476 S.W.2d 278, 280–81 (Tex.1972), to interpret insurance contracts as written and leave changes to the Legislature or insurance regulatory agency. I dissent.

The rules governing interpretation of contracts in general apply to interpreting insurance policies. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). The parties do not contend AESIC's policy is a form promulgated by the State or a regulatory authority, so we seek to ascertain the intent of the parties and interpret the policy accordingly. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). In ascertaining the parties' intent, we look first and primarily to the written words used. *Id.* ("As with any other contract, the parties' intent is governed by what they said . . . ."); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) ("Our primary goal, therefore, is to give effect to the written expression of the parties' intent."); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). Despite regular invitations to add to or ignore language when interpreting insurance policies, this Court has generally adhered to the principle that judges interpret language to which parties have agreed, not alter it. *E.g., Fortis Benefits v. Cantu,*

---

11. Because we hold that AESIC cannot deny Prodigy coverage for the FlashNet claim, we do we do not consider Prodigy's contention that AESIC was precluded from enforcing the notice provision because the policy was sold in violation of the surplus lines statute.

234 S.W.3d 642, 647, 649 (Tex.2007) (noting that contract rights arise from the parties' agreement, not principles of equity and declining to "judicially rewrite the parties' contract by engrafting extra-contractual standards"); *Fiess,* 202 S.W.3d at 753 ("For more than a century this Court has held that in construing insurance policies 'where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction.' ") (quoting *E. Tex. Fire Ins. Co. v. Kempner,* 87 Tex. 229, 27 S.W. 122, 122 (1894)); *but see PAJ, Inc. v. Hanover Ins. Co.,* 243 S.W.3d 630, 636–37 (Tex.2008) (holding that as to an occurrence-based policy, an insured's breach of its obligation to timely notify the insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay).

In *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.,* we rejected an insurer's claim for equitable reimbursement from its insured, in part, because allowing reimbursement would have required us to " 'rewrite the parties' contract or add to its language.' " 246 S.W.3d 42, 50 (Tex.2008) (quoting *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 162 (Tex.2003)). In *Excess Underwriters* we also quoted with approval language the Court used in *Fortis Benefits* where we said we are " 'loathe to judicially rewrite the parties' contract by engrafting extra-contractual standards.' " *Id.* at 51 (quoting *Fortis Benefits,* 234 S.W.3d at 649).

But today the Court holds AESIC cannot deny coverage to Prodigy even if Prodigy breached the explicit contract language requiring notice of the claim "in writing, as soon as practicable" because (1) that part of the notice provision was not an essential part of the bargained-for exchange; (2)

AESIC did not show it was prejudiced by the timing of written notice; and (3) written notice was given within the time period allowed by another part of the policy's notice provision. 288 S.W.3d 376, 378. The Court poses the issue as "whether 'notice as soon as practicable' is an essential part of the bargained-for exchange in the claims-made policy at issue here." I disagree that the record shows the "as soon as practicable" notice provision was not an essential part of the parties' agreement.

In determining whether the notice provisions of AESIC's policy were essential to the agreement, the first place to seek the answer is the policy itself. AESIC's policy consists of a declarations page, a cover page, three pages setting out the terms of the insurance, plus endorsements. The statement "THIS IS A CLAIMS MADE POLICY, READ IT CAREFULLY" appears at the top of the declarations page and the first page of the policy. The first section of the policy is "Section I. Insuring Agreements" made up of two paragraphs—one applicable to FlashNet's directors and officers and the other applicable to FlashNet as a company. Page three of the policy contains "Section VII. Notice of Claim." The Notice of Claim provision originally contained condition precedent language and a hard-and-fast requirement that written notice of any claim be given within ninety days after the claim was made. It was amended to require written notice to AESIC as soon as practicable "but in no event later than ninety (90) days after the expiration of the Policy Period or Discovery Period." The entire endorsement reads as follows:

> The Directors or Officers shall, *as a condition precedent* to their rights under this Policy, give the Insurer notice, in writing, as soon as practicable of any Claim first made against the Directors

and Officers during the Policy Period, or Discovery Period (if applicable), but in no event later than ninety (90) days after the expiration of the Policy Period or Discovery Period, and shall give the Insurer such information and cooperation as it may reasonably require.

(emphasis added). Timely notice was clearly and explicitly a condition precedent to any rights under the policy. Prodigy does not contend the endorsement language is unclear or that FlashNet ever sought any other notice language. Nor does Prodigy contend that FlashNet, a company involved with sophisticated legal matters such as public stock offerings and securities law was misled about or protested the notice provisions when it purchased the policy and the endorsement.

The record and sequence of events indicate that all the notice language, including timing of notice, was an important part of the policy: timely notice was a condition precedent in the original policy and the condition precedent language was carried forward into the endorsement. Certainly the record does not show as a matter of law that the notice language was *not* essential to the parties' agreement. The Court's conclusion otherwise is in derogation of the parties' intent as expressed by policy language.

The Court concludes, relying on decisions from other jurisdictions and legal treatises, that in order for an insurer to deny coverage under claims-made policies for breach of a reporting requirement, the insurer (1) must show prejudice if the insured gives notice of a claim within the policy period or a specified time after policy termination, even though the notice was not "as soon as practicable," but (2) need not show prejudice if the insured gives notice of a claim outside the policy period or the time allowed in the policy for reporting claims after policy termination, if

any. 288 S.W.3d at 377. The Court says a requirement of notice "as soon as practicable" is more part of the investigative process and not as much a part of the coverage bargain between the insurer and insured as is an end-of-policy notice requirement. But the insuring agreements and notice provisions of AESIC's policy are completely separate. That separation militates against classifying one notice provision in Section VII as more important because it is a coverage-type provision and the other notice provision as less important because it is an investigation-type provision. Neither of those classifications for the notice provisions is indicated by policy language.

Furthermore, the record demonstrates no logical reason to apply a different rule to AESIC's end-of-policy notice provision. There is no basis in the record for concluding Prodigy's one-year delay in reporting the claim was any more or less important to AESIC's insurance business than if Prodigy had delayed for a year reporting a claim made on the last day of the Discovery Period. In the latter circumstance, the Court says AESIC would not be required to show prejudice and the condition precedent language would preclude the insurer's liability because the insurer needs to close its books as to the policy. We should be bound by the record the parties bring, and the record does not support either the latter statement or treating the delays differently. But first and foremost, the policy language shows AESIC and Prodigy intended for the two notice provisions to have the same effect: both are conditions precedent to Prodigy's rights under the policy. We should respect the agreement.

In holding a showing of prejudice is required for failure to give notice as soon as practicable, but not for notice failing to comply with the end-of-policy provision,

the Court relies on cases from other states. But two cases emphasized by the Court highlight the very point made long ago in *Cutaia* that the Court should defer to legislative and regulatory entities to (1) address the notice-prejudice question, and (2) change policy language if change was deemed necessary. *Cutaia*, 476 S.W.2d at 280–81. In *T.H.E. `Insurance Co. v. P.T.P.*, 331 Md. 406, 628 A.2d 223 (1993) and *Chas. T. Main, Inc. v. Fireman's Fund Insurance Co.*, 406 Mass. 862, 551 N.E.2d 28 (1990), referenced by the Court, the notice-prejudice issue was addressed by statute and the courts were considering how notice provisions should be treated in light of the statutes. In *Chas. T. Main*, the Supreme Judicial Court of Massachusetts considered a claims-made professional liability policy in light of a statute that provided, in part, as follows:

> An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim, which may give rise to liability insured against unless the insurance company has been prejudiced thereby.

MASS. GEN. LAWS ch. 175, § 112 (1988). The Massachusetts court said, without reference to the record, "the requirement that notice of the claim be given in the policy period or shortly thereafter in the claims-made policy is of the essence in determining whether coverage exists." *Chas. T. Main*, 551 N.E.2d at 30. However, the court, in summary fashion, held the statute applied only to the "as soon as

practicable" notice and not to the "within the policy year" notice. *Id.* It stated that applying the statute to "within the policy year" notice provisions would defeat the fundamental concept on which claims-made policies are premised, and it would be unreasonable to think that the Legislature intended such a result. *Id.*

And in *T.H.E. Insurance Co.*, the Maryland Court of Appeals considered the effect of a statutory notice-prejudice provision on a claims-made policy. 628 A.2d at 223. The statute involved provided:

> Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer establishes, by a preponderance of affirmative evidence that such lack of co-operation or notice has resulted in actual prejudice to the insurer.

MD. ANN. CODE of 1957 art. 48A, § 482 (1991 Repl. Vol.). The court noted that under one of its previous holdings, if a claim had been reported within the extended reporting period, the insurer would have had to prove actual prejudice. *T.H.E. Ins. Co.*, 628 A.2d at 226 n. 7. However, the court held that the statute did not operate to revive the policy as to notice of a claim given after the end of the policy period. *Id.* at 227. Texas does not have a statute, regulation, or agency directive that similarly applies to AESIC's policy.[1]

---

1. Texas does have a State Board of Insurance Order relating to bodily injury or property damage liability claims covered by general liability policies. *See PAJ*, 243 S.W.3d at 632; State Board of Insurance, *Revision of Texas Standard Provision For General Liability Poli-*

*cies—Amendatory Endorsement–Notice,* Order No. 23080 (Mar. 13, 1973) ("As respects bodily injury liability coverage and property damage liability coverage, unless the company is prejudiced by the insured's failure to comply with the requirement, any provision of this

Even disregarding the record, the general discussion of claims-made policies by which the Court eventually differentiates between the two types of notices does not support the step the Court takes. The claims-made policy involved here insures against claims first made against directors and officers during the policy period. As noted above, the notice and insuring agreements of AESIC's policy are separate: the Insuring Agreements are in Section I; the Notice of Claim provisions are in Section VII. For all practical purposes AESIC's policy insures against events—claims first made during the policy period—just as an occurrence policy insures against events—occurrences during the policy period. The difference is that under occurrence policies the insurer may not know of the event it has insured against for a long time after the event, whereas AESIC should know of the event it has insured against (a claim against its insured) during the policy period or within ninety days after expiration of the Discovery Period. Thus, under AESIC's claims-made policy as it is written, the notice requirements terminate the insurer's obligations (1) as the policy period passes without notice of claim being given, or (2) at the latest, ninety days after the Discovery Period ends. But when courts rewrite existing policy provisions as the Court does in this case, insurers' actuarial predictions of losses and expenses, and the process of setting premium rates to cover projected losses and expenses are disrupted. *See* Neil A. Doherty, *The Design of Insurance Contracts When Liability Rules are Unstable*, 58 J. OF RISK AND INS. 227, 227 (1991) ("[T]he recent liability insurance 'crisis' in the United States appears to be a response to a destabilization of the legal system. Insurers argue that they are able to insure the liabilities of clients arising

under an unchanging set of liability rules, but they cannot insure against changes in the rules themselves."). Policy language and its effects on the insurer's business are matters better addressed through the legislative and regulatory processes than through the judicial process. The legislative and regulatory processes allow prospective implementation of changes to policy language and prospective calculation of premiums based on risks assumed by the insurer. Modifications to agreements through the judicial process, however, are primarily retrospective, long after the contracts were entered into and premiums calculated and paid based on agreed-to policy language.

In *Cutaia*, the Court recognized these policy reasons behind leaving changes to the Legislature or regulatory agency. *Cutaia*, 476 S.W.2d at 280–81. But here, the Court does not respect the agreement of the parties or exercise the restraint that it did in *Cutaia*. In *Cutaia* an automobile liability policy required, as one of several conditions precedent to the insured's rights under the policy, that the insured give notice of any accident to the insurer and immediately forward any suit papers. *Id.* at 278. Cutaia, the insured, was sued but failed to forward suit papers to the insurer. *Id.* Following a trial and entry of judgment against Cutaia, the insurer denied coverage because Cutaia did not forward the suit papers. *Id.* at 279. In rendering judgment for the insurer, we noted "[t]here is no provision in the policy that failure to comply with the conditions precedent would be excused if no harm or prejudice were suffered by the insurer; and *such a provision would have to be inserted into the policy by implication.*"

---

policy requiring the insured to give notice of action, occurrence or loss, or requiring the insured to forward demands, notices, summons or other legal process, shall not bar liability under this policy.").

*Id.* at 278 (emphasis added). The Court declined to override the insurance policy language and by judicial fiat add a prejudice provision to the policy:

> We are, therefore, faced with plain wording of the contract and the holdings of this Court; and we are also faced with facts which show an apparent injustice. The problem then arises as to whether, or what, changes should be made, and by whom. Should this Court overrule its former decisions and say that provisions in the policy are Not conditions precedent to liability? Or should we imply into the policy a provision that failure to comply with the condition precedent will be excused if no harm or prejudice is shown? Or should we enforce the provisions as written and call the matter to the attention of those who, for the public, are charged with prescribing policy forms as well as with the approval or disapproval of the provisions of the policy?
>
> . . . .
>
> Our conclusion is, however, that *on balance it is better policy for the contracts of insurance to be changed by the public body charged with their supervision, the State Board of Insurance, or by the Legislature, rather than for this Court to insert a provision that violations of conditions precedent will be excused if no harm results from their violation.*

*Id.* at 280, 281 (emphasis added).

Similar to the situation in *Cutaia,* Prodigy's written notice did not comply with requirements agreed to as conditions precedent when the policy was purchased. Nevertheless, the court holds Prodigy's untimely notice of claim is now timely and presumably will require payment under a policy with limits of three million dollars. Unlike its choice in *Cutaia,* the Court's choice today is to inject itself into a con-

tractual relationship between two sophisticated parties, insert language into the policy, and change the policy so it in effect provides:

> The Directors or Officers shall, as a condition precedent to their rights under this Policy, give the Insurer notice, in writing, as soon as practicable of any Claim first made against the Directors and Officers during the Policy Period, or Discovery Period, (if applicable), but in no event later than ninety (90) days after the expiration of the Policy Period or Discovery Period, and shall give the Insurer such information and cooperation as it may reasonably require. *Notwithstanding the foregoing provision, the insureds shall not lose any rights under the policy if written notice of a covered claim is given not later than ninety (90) days after the expiration of the Policy Period or Discovery Period, (if applicable), unless the insurer proves it was prejudiced by the failure to give notice as soon as practicable.*

*See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.,* 174 F.3d 653, 657 (5th Cir.1999).

The language effectively added by the Court looks remarkably similar to language in notice-prejudice statutes, regulations, and agency orders. *See* State Board of Insurance, *Revision of Texas Standard Provision For General Liability Policies—Amendatory Endorsement–Notice,* Order No. 23080 (Mar. 13, 1973); MASS. GEN. LAWS ch. 175, § 112 (1988); MD.CODE ANN. of 1957 art. 48A, § 482 (1991 Repl. Vol.). But in matters such as this the Court cannot enact legislation or issue agency orders, and it should limit itself to interpreting or construing agreements— not changing them.

The better choice for courts, as the Court noted in *Cutaia,* is if changes to insurance policy language are to be man-

dated that affect timing and amount of insurers' actual or incurred loss provisions, other parts of the insurance companies' business, and policy clauses related to rate or premium calculations, the changes should be left to the Legislature and regulatory agencies. *See, e.g.,* J. David Cummins, *Statistical and Financial Models of Insurance Pricing and the Insurance Firm,* 52 J. OF RISK AND INS. 261 (1991). The Legislature and regulatory bodies such as the Texas Department of Insurance have the time, staff, resources and expertise to investigate and bring all relevant information to bear on such issues. I adhere to the opinion expressed by the dissent in *PAJ*:

> I would reaffirm *Cutaia's* recognition that the Legislature and the state agency overseeing the insurance industry are better suited to decide whether an insurer must show prejudice to deny coverage based on late notice. TDI and legislators are free to supplant *Cutaia's* no-prejudice rule with a more liberal notice-prejudice rule if they believe, on public policy grounds, that the latter is preferable.

*PAJ*, 243 S.W.3d at 641 (Willett, J., dissenting).

I would hold that on this record there is no evidence the condition precedent language requiring written notice of claim to AESIC "as soon as practicable" was not essential to AESIC's policy having been issued. I would affirm the judgment of the court of appeals as to that issue. I would affirm the remainder of the court of appeals' judgment for the reasons stated in the court of appeals' opinion.