**Affirmed and Opinion Filed July 21, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01106-CV

### NICHOLAS PETROLEUM, INC., Appellant
### V.
### MID-CONTINENT CASUALTY COMPANY, Appellee

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-02336**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Lang-Miers
Opinion by Justice Bridges

This case involves an insurance coverage lawsuit filed by appellant Nicholas Petroleum, Inc. ("Nicholas") against its insurer, appellee Mid-Continent Casualty Company ("Mid-Continent"). The trial court granted a traditional summary judgment in favor of Mid-Continent. On appeal, Nicholas argues the trial court erred by granting summary judgment because a factual dispute exists as to when Mid-Continent's coverage obligations began. Mid-Continent responds it conclusively established no coverage existed under its insuring policies. We affirm.

### Background

Nicholas owns and operates a gas station in Dallas, Texas. Mid-Continent issued Nicholas a Pollution Liability and Environmental Damage Policy Declaration, which provided coverage for its underground storage tanks, for the policy period of September 17, 2007 to September 17, 2008, and a renewal for the policy period of September 17, 2008 to September 17,

2009. Both policies are claims-made policies and explicitly state, "THIS INSURANCE DOES NOT APPLY TO CLAIMS WHICH OCCUR BEFORE THE RETROACTIVE DATE SHOWN HERE: 9/17/07." Nicholas claims Mid-Continent issued an earlier policy that covered the policy dates of May 12, 2006 to May 12, 2007; however, Nicholas admits to only receiving a copy of the original Certificates of Insurance and not a copy of the insurance policy itself. The record does not contain a copy of this policy.

The 2007 and 2008 policies provided the following:

I. INSURING AGREEMENT

Coverage A:

> We will pay those sums that an insured is legally obligated to pay as a result of a release(s) from scheduled Storage Tank System(s) commencing after the Retroactive Date which result in Bodily Injury or Property Damage to which this insurance applies. We will have the right and duty to defend any claim seeking those damages. All claim(s) must be reported to the company, in writing, by the Named Insured during the Policy Period or Extended Reporting Period, if applicable.[1]

"Release" is defined in the policies as "any spilling, leaking, emitting, discharging, escaping or leeching of one or more Regulated Substances from a Storage Tank System into groundwater, surfacewater, surface or subsurface soils, or the atmosphere." The policies further provide it is a condition precedent to coverage that "In the event of a Claim under Coverage A, the Insured shall give us written notice as soon as possible but in any event no later than thirty (30) days after receipt of the Claim by the Insured." The policies define "Claim" under Coverage A to mean "A written demand received by an Insured seeking a remedy and alleging liability or responsibility on the part of an Insured for Loss." The policies define "Loss" as "monetary

---

[1] The policies also provided for "Coverage B" and "Coverage C"; however, because of our disposition of the appeal under "Coverage A," we do not discuss them. Further, the record does not show, and the parties have not argued, that the policies have an "Extended Reporting Period."

awards or settlements of compensatory damages arising from Bodily Injury or Property Damage."

On May 10, 2006, the Texas Commission on Environmental Quality ("TCEQ") sent Nicholas a letter advising that subsurface contamination had been reported, and "Because the storage tank system at your facility was close to the area of contamination . . . you are requested to make immediate arrangements to determine whether there is any evidence of contamination due to leakage or spillage from your tank system." The letter specified samples should be tested for certain hazardous substances, some of which fell under the policies' definition of "Regulated Substances."[2] The TCEQ further required Nicholas to contact an environmental consulting firm to conduct a subsurface assessment of the area around its storage tanks. The letter also informed Nicholas that "As a potential responsible party (RP), you are responsible to pursue whatever actions are necessary to minimize any imminent impacts or threats to human health and safety and to stabilize the conditions caused by your storage tank system."

On August 2, 2006, an attorney representing Coit Partners, L.P., who owned a Washington Mutual building next to Nicholas's gas station, referred to as the "WAMU site," sent a letter to Nicholas explaining the firm has been retained to pursue claims related to the contamination of the WAMU site from what appeared to be leaking from underground storage tanks at the gas station. The letter alleged Coit Partners had been damaged because a buyer terminated a contract to purchase the WAMU site after the discovery of contamination during the inspection.

On August 23, 2006, the TCEQ sent another letter stating it received Nicholas's Phase I Environmental Site Assessment sent in response to the TCEQ's May 10, 2006 letter, but the

---

[2] The hazardous substances included benzene, toluene, ethylbenzene, and total xylene (BTEX), total petroleum hydrocarbone (TPH), and polycyclic aromatic hydrocarbons (PAHs), volatile organic compounds (VOCs), RCRA metals, and methyl tertiary butyl ether (MTBE).

assessment did not contain any subsurface investigation as requested in the May 10, 2006 letter. The TCEQ again advised Nicholas to contact a registered environmental consulting firm.

The TCEQ continued to send similar letters to Nicholas on July 12, 2007, September 12, 2007, February 5, 2008, and July 13, 2008. Nicholas never responded. Nicholas also never responded to Coit Partners's demands for alleged damages to the WAMU site caused by leakage from the storage tanks.

On August 4, 2008, Coit Partners filed its original petition against Nicholas for damages suffered because of the "migration of off-site contamination onto its property."

In early September of 2008, motorists in the area of the gas station reported smelling gas and shortly thereafter, the TCEQ sent Mr. Lonnie Gilley to conduct an investigation. His investigation lasted from September 5, 2008 until October 17, 2008. Gilley's investigation located a leak in a super unleaded line. The leak was repaired by October 20, 2008. However, because of the leak, Gilley (on behalf of the TCEQ), directed Nicholas to contact a licensed correction action specialist to assess the extent of the contamination and submit a release determination report.

HKC and Associates, Inc. conducted the release determination, and Hassan Chamseddin prepared the report. The report stated "analytical results of the water samples from the two wells showed BTEX, MTBE, and TPH . . . ." Mulaw Worash, the tank owner contact person for Nicholas, signed the report on November 25, 2008 certifying that he reviewed the report for accuracy.

According to Nicholas, the TCEQ first "formally notified" it of a "release," as defined under the policy, on its property in a February 5, 2009 letter. Approximately two months later, on April 10, 2009, Nicholas notified Mid-Continent of the litigation with Coit Partners resulting from environmental contamination. In a letter dated May 11, 2009, Mid-Continent denied

–4–

coverage based on Nicholas's failure to notify the insurer of a claim within thirty days, as required by the policy. It further denied coverage based on certain exclusions.

Nicholas ultimately settled the lawsuit with Coit Partners and entered into an agreed judgment in which Nicholas agreed to pay $175,000, plus five percent interest, over a period of years with the final payment due on December 31, 2013. Because Mid-Continent denied coverage and refused to reimburse Nicholas for the agreed judgment, Nicholas filed the underlying lawsuit alleging breach of contract, violations of the Texas Insurance Code, and a breach of the duty of good faith and fair dealing.

Mid-Continent filed a no-evidence motion for summary judgment, which the trial court denied. It later filed a traditional motion for summary judgment and argued Nicholas failed to provide the required notice of a claim, an expert report provided by Chamseddin established a release happened in 2005, which was before any insurance policy provided coverage, and certain policy exclusions applied. The trial court granted Mid-Continent's traditional motion for summary judgment without specifying the grounds for its order.

On appeal, Nicholas argues summary judgment was inappropriate because Mid-Continent's evidence failed to establish as a matter of law, or at the very least created a fact issue, as to whether Nicholas's storage tanks "released" regulated substances before the policy periods. Nicholas further argues Mid-Continent failed to conclusively prove it was prejudiced by Nicholas's allegedly late notice of the claim.

**Standards of Review**

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id*. Under rule 166a(c), the party moving for

summary judgment bears the burden to show that no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Knott*, 128 S.W.3d at 215. Because the trial court's order does not specify the grounds for summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and presented for appellate review are meritorious. *Knott*, 128 S.W.3d at 215.

Under Texas law, the insured has the burden of establishing coverage under the terms of the policy. *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). If the insured proves coverage, then to avoid liability the insurer must prove an exclusion bars coverage. *Id*. If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back into coverage. *Id*.

When analyzing an insurance contract, we are guided by the well-established principles of contract construction. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). Our primary goal is to determine the contracting parties' intent through the policy's written language. *Id*. We must read all parts of the contract together, giving effect to each word, clause, and sentence, and avoid making any provision within the policy inoperative. *Id*. Our analysis of the policy is confined to within the four corners of the policy itself. *Id*.

### Notice Required Under the Policy

Because we can resolve this appeal by addressing the parties' notice arguments, we will address only that issue in which Nicholas contends Mid-Continent failed to conclusively establish Mid-Continent was prejudiced by its late notice of a claim under the insuring policy. *See*, *e.g., Knott*, 128 S.W.3d at 215 (when trial court's order does not specify grounds for summary judgment, we must affirm summary judgment if any of the theories presented to trial court and presented for appellate review are meritorious).

The September 17, 2007 to September 17, 2008 and September 17, 2008 to September 17, 2009 policies both contain the following notice provision:

> II. CLAIM PROVISIONS
>
> > A.      It is a condition precedent to coverage under this Policy that:
> >
> > > 1.      In the event of a Claim under Coverage A, the Insured shall give us written notice as soon as possible but in any event no later than thirty (30) days after the receipt of the Claim by the Insured.

According to Nicholas, it did not receive notice of a claim under Coverage A until the TCEQ sent a letter on February 5, 2009 stating it "has become aware that a release has occurred from a storage tank system [on Nicholas's property]" and Nicholas was the "responsible party."

Nicholas concedes it failed to give notice of the Coit Partners lawsuit to Mid-Continent until April 10, 2009, which is later than the 2008–2009 policy's thirty-day notice provision.[3] However, because it provided notice within the policy coverage period, Nicholas argues Mid-Continent was required to establish it was prejudiced by Nicholas's failure to give notice within thirty days before denying coverage. Nicholas argues the record contains no evidence of prejudice; therefore, the trial court could not grant summary judgment on Mid-Continent's notice argument. Mid-Continent responds it was not required to establish prejudice before denying coverage. Both parties rely on *Prodigy Communications Corp. v. Agricultural Excess & Surplus Insurance Co.*, 288 S.W.3d 374 (Tex. 2009) to support their position.

In *Prodigy*, the Texas Supreme Court was asked to determine whether the "notice-prejudice rule applies to a claims-made policy when the notice provision requires that the insured, 'as a condition precedent' to its rights under the policy, give notice of a claim to its

---

[3] For purposes of our review, this policy is the only one at issue. Because Nicholas did not receive notice of a claim from the TCEQ until February 5, 2009, the May 12, 2006 to May 12, 2007 and September 17, 2007 to September 17, 2008 policies are inapplicable.

insurer 'as soon as practicable . . . but in no event later than ninety (90) days after the expiration of the Policy Period or Discovery Period.'" *Id*. at 375.[4]

The parties disputed whether notice was given "as soon as practicable" but agreed the insured provided notice within the ninety-day cut off period. *Id*. The insurer also admitted it was not prejudiced by the delayed notice. *Id*.

The court noted that, while the notice provision was a "condition precedent," it needed to "go further to determine whether prejudice is, or is not, required." *Id*. at 378. The court then explained the main difference between an occurrence-based and claims-made policy: a claims-made policy limits the liability to claims asserted during the policy period, which allows insurers to calculate risks and premiums with greater precision. *Id*. at 379.

The court concluded the obligation to provide notice of a claim "as soon as practicable" was not a material part of the bargained-for exchange under "this" claims-made policy. *Id*. at 382. It determined that in a claims-made policy, when an insured gives notice of a claim within the policy period or other specified reporting period, the insurer must show that the insured's noncompliance with the "as soon as practicable" notice provision prejudiced the insurer before it may deny coverage. *Id*. It reasoned that under these facts, the insurer was not denied the benefit of the claims-made nature of its policy because it could not "close its books" on the policy until ninety days after the discovery period expired. *Id*. (citing *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1330 (5th Cir. 1994) (noting that "the notice requirements in claims made policies allow the insurer to 'close the books' on a policy at its expiration and thus to 'attain a level of predictability unattainable under standard occurrence policies'")).

---

[4] The court had previously determined in *PAJ, Inc. v. Hanover Insurance Co*., 243 S.W.3d 630, 636–37 (Tex. 2008) that an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage under an occurrence-based policy if the insurer is not prejudiced by the delay.

Nicholas argues *Prodigy* supports its position that a showing of prejudice is required because, like the insured in *Prodigy*, it failed to comply with the condition precedent notice requirement; however, it provided notice within the policy period. Mid-Continent contends it was not required to show prejudice before denying coverage because the type of policy and the language of the notice provision is different from the one at issue in *Prodigy*.

We first address Mid-Continent's argument regarding the type of policy at issue. While we agree with Mid-Continent that one goal of a pollution liability and environmental damage coverage policy is to address contamination so as to minimize both damage to the environment and an insurer's exposure under the policy, we do not find this distinction from the "Directors' and Officers' Liability Insurance Policy" analyzed in *Prodigy* alone to be determinative. Rather, we conclude the distinction lies in the issue decided, as framed by the *Prodigy* court, and the difference in the notice provision in Mid-Continent's policy.

The court's focus in *Prodigy* was on the "as soon as practicable" language of a notice provision and whether the "condition precedent" was an essential part of the bargained-for exchange. The court stated "an immaterial breach does not deprive the insurer of the benefit of the bargain . . . and Prodigy's obligation to provide [the insurer] with notice of a claim 'as soon as practicable' was not a material part of the bargained-for exchange" so as to defeat coverage. *Id.* at 382; *see also Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 769 (Tex. 2014) (acknowledging the holding in *Prodigy* as to whether the "as soon as practicable" language was an essential part of the bargained-for exchange under the policy). Thus, the court concluded that as long as an insured provided notice within the policy period, despite failing to provide notice "as soon as practicable," the insurer could not deny coverage unless the insurer showed prejudice from the delay.

Here, Mid-Continent's notice provision required Nicholas to not only provide notice of a claim "as soon as possible," but also required notice of a claim " . . . in any event no later than thirty (30) days after receipt of the Claim by the Insured." This additional restrictive language was not present in the *Prodigy* notice provision. As such, the court did not consider whether an insurer must show prejudice before denying coverage when an insured fails to provide notice under a claims-made policy that includes a specific time-frame for providing written notice.

The parties' intent must be taken from the contract itself, not from the parties' present interpretation, and the contract must be enforced as written. *Lewis v. Foxworth*, 170 S.W.3d 900, 903 (Tex. App.—Dallas 2005, no pet.). We may neither rewrite the contract nor add to its language. *Id.* It is undisputed the policy unambiguously states the notice provision is a condition precedent to coverage. Thus, given the specificity of the language, the notice provision is a material part of the bargained-for exchange in this policy, and Nicholas's failure to comply with the notice provision was a material breach.

Therefore, Nicholas failed to give written notice of a claim as soon as possible or within the only other time period allowed under the notice provision—thirty days after receipt of a claim. We will neither ignore the plain language of the policy which required Nicholas to comply with the notice provision as a condition precedent to coverage nor read into the policy language requiring Mid-Continent to establish it was prejudiced by Nicholas's failure to comply. *See Tenneco Inc. v. Enter. Prod. Co.*, 925 S.W.2d 640, 646 (Tex. 1996) ("We have long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained."). Because the purpose of a claims-made policy is to define the limits of the insurer's obligation, when there is no timely notice, there is no coverage. *Id.* at 380 (citing 13 COUCH ON INSURANCE 3D § 186:13). Therefore, Mid-Continent established as a matter of law that Nicholas failed to comply with the policy's notice

–10–

provision. Accordingly, the trial court properly granted summary judgment in its favor. We overrule Nicholas's second issue.

## Extracontractual Claims

In its final issue, Nicholas argues a factual dispute exists as to whether Mid-Continent acted in bad faith. Mid-Continent responds summary judgment was appropriate because it established as a matter of law it did not have a duty to defend under its policies. We agree with Mid-Continent.

Nicholas asserted breach of contract and insurance code violations against Mid-Continent for denying its claim and failing to objectively investigate the claim. It also alleged Mid-Continent breached its duty of good faith and fair dealing. Because we have concluded summary judgment for Mid-Continent was proper, Nicholas's arguments as to its extracontractual claims necessarily fail. *See, e.g.*, *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ("As a general rule, there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."); *Crocker v. Am. Nat'l Gen. Ins. Co.*, 211 S.W.3d 928, 936 (Tex. App.—Dallas 2007, no pet.). Nicholas's final issue is overruled.

## Conclusion

Having concluded Mid-Continent presented uncontroverted evidence that a release occurred prior to any insurance policy requiring coverage, Mid-Continent established as a matter of law it had no duty to defend Nicholas's claim. Moreover, Nicholas failed to comply with a specific notice requirement, which was a condition precedent to coverage. Accordingly, the trial court properly granted summary judgment in favor of Mid-Continent.

The judgment of the trial court is affirmed.


131106F.P05
/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NICHOLAS PETROLEUM, INC.,
Appellant

No. 05-13-01106-CV      V.

MID-CONTINENT CASUALTY
COMPANY, Appellee

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 11-02336.
Opinion delivered by Justice Bridges.
Justices Lang and Lang-Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MID-CONTINENT CASUALTY COMPANY recover its costs of this appeal from appellant NICHOLAS PETROLEUM, INC.

Judgment entered July 21, 2015.

–13–