**In the Matter of LAUDERDALE MOTORCAR CORP., Debtor.**

**LAUDERDALE MOTORCAR CORP., Plaintiff,**

v.

**ROLLS–ROYCE MOTORS INC., Defendant.**

**Bankruptcy No. 83–01410–BKC–SMW. Adv. No. 83–0798–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Nov. 30, 1983.

Chad P. Pugatch, Cooper, Shahady, Frazier & Pugatch, Fort Lauderdale, Fla., for debtor.

Donald H. Rivkin, W. Michael Garner, Rivkin Sherman & Levy, Mitchel H. Perkiel, Levin & Weintraub & Crames, New York City, Paul R. Larkin, Jr., Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause came on to be heard before the Court upon the motion of the defendant ROLLS–ROYCE MOTORS INC. ("ROLLS–ROYCE") for summary judgment dismissing the Complaint of the plaintiff-debtor LAUDERDALE MOTORCAR CORPORATION ("Debtor"), and the Debtor's cross-motion for summary judgment.

The Court, having examined the pleadings, the affidavits of Roy Owen and Donald Beck, sworn to October 12, 1983, and the exhibits thereto, the Stipulated Facts re: Motions for Summary Judgment, executed by the attorneys for the parties on November 17, 1983, and the Court having heard and considered the arguments of counsel for the respective parties and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law.

### Findings of Fact

A. The Debtor, which was engaged in the business of operating a dealership for the sale at retail and the service of new "Rolls-Royce" automobiles, filed a petition for reorganization under Chapter 11, section 301 of the Bankruptcy Code (the "Code") on July 27, 1983 with this Court. On September 30, 1983 the Debtor filed a complaint against ROLLS–ROYCE seeking a declaration that its Dealer Agreement with ROLLS–ROYCE, under which it was operating as an authorized "Rolls-Royce" dealer, was in full force and effect and also seeking injunctive relief against ROLLS–ROYCE for purported violation of the automatic stay provisions of section 362 of the Code (the "Complaint"). The Complaint also sought an award of damages and mandatory injunctive relief with respect to alleged withholding of parts and automobiles and damages for alleged violation of 15 U.S.C. Section 1221 et seq.

B. On October 13, 1983 ROLLS–ROYCE filed an answer and counterclaims and a motion for summary judgment, averring that there were no genuine issues of material fact and seeking dismissal of all counts of the Complaint. On October 25, 1983, the Debtor moved for a temporary restraining order, and after an emergency hearing, this Court entered an order to preserve the *status quo* pending a hearing on ROLLS–ROYCE'S motion for summary judgment, scheduled for November 2, 1983. After that hearing, on November 7, 1983, the Debtor served a cross-motion for summary judgment in its favor, also averring that there were no genuine issues of material fact in dispute. The Court heard oral argument on the Debtor's motion on November 17, 1983.

C. At the November 17, 1983 hearing, counsel for the Debtor withdrew the portions of the Complaint seeking various awards of damages, leaving for decision the issues relating to the vitality of the Dealer Agreement. At that hearing, both parties, by their attorneys, stipulated that there were no genuine issues of material fact for decision by this Court, and that this matter is ripe for decision by summary judgment for either party.

D. The Court requested and the parties filed a written stipulation of facts entitled "Stipulated Facts Re: Motions for Summary Judgment," dated November 17, 1983, the relevant portions of which are set forth here *verbatim* and which the Court adopts:

"1. This cause comes before the Court on cross-motions for summary judgment by Defendant and Plaintiff respectively. The parties have stipulated to the Plaintiff's withdrawal of the damage claims of the Complaint without prejudice leaving for decision the issue whether by virtue of the Bankruptcy Code and/or Florida law the Dealer Agreement between the Debtor, Lauderdale Motorcar Corporation and ROLLS–ROYCE MOTORS INC. (the "Dealer Agreement") is in effect.

"2. This Court has jurisdiction of this action.

"3. The record before the Court consists of the pleadings, the discovery on file, the affidavits of Roy Owen and Donald Beck, sworn to October 12, 1983 and Exhibits A through Y thereto.

"4. The Debtor is a Florida corporation doing business in Broward County, Florida as an automobile dealer. Rolls-Royce Motors Inc. ("Rolls-Royce"), a Delaware corporation with its principal place of business in Lyndhurst, New Jersey, is the importer and distributor of 'Rolls-Royce' and 'Bentley' motorcars in the United States.

"5. The Debtor and Rolls-Royce were party to a Dealer Agreement dated as of October 1, 1982 pursuant to which the Debtor was authorized to sell at retail and to service new Rolls-Royce automobiles. A copy of the Dealer Agreement is annexed as Exhibit A to the Complaint. The Dealer Agreement provided that it would expire September 30, 1983.

"6. On June 22, 1983, Rolls-Royce sent via certified mail a notice to the Debtor that the Dealer Agreement would not be renewed at its expiration, September 30, 1983. The notice, a copy of which is annexed as Exhibit A to the Affidavit of Roy Owen, set forth five (5) reasons for the non-renewal, and a copy of the notice was sent to the Florida Department of Highway Safety and Motor Vehicles.

"7. On July 27, 1983, the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code.

"8. No complaint was filed by the Debtor with the Florida Department of Highway Safety and Motor Vehicles, pursuant to Fla.Stat. § 320.641 on or before September 30, 1983."

E. Thus, as at September 30, 1983, no action to continue the Dealer Agreement in effect had been taken by the Debtor, and the Dealer Agreement, by its own terms, expired on that date.

*Conclusions of Law*

■ On the date of the filing of the Chapter 11 petition, July 27, 1983 (the "Filing Date"), all of the Debtor's legal or

equitable interests in property became property of the Chapter 11 Debtor's estate. 11 U.S.C. § 541; H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977) and S.Rep. No. 989, 95th Cong.2d Sess. 82, U.S.Code Cong. & Admin.News 1978, 5787 (1978). The Debtor's property rights included the Dealer Agreement as it existed on July 27, 1983. Countryman, Executory Contracts in Bankruptcy, 57 Minn.L.Rev. 439 and 58 Minn.L. Rev. 479 (1973). On the Filing Date, the Dealer Agreement was an executory contract the vitality of which must turn on the agreement's own terms and applicable state law. *In re Benrus Watch Co., Inc.,* 13 B.R. 331 (Bkrtcy.S.D.N.Y.1981).

■ The Dealer Agreement was a one-year agreement. It was entered into October 1, 1982, and provided for an expiration date of September 30, 1983. In the absence of any contrary provision of law, the contractual expiration provision survives the filing of the Debtor's Chapter 11 petition. *In re Benrus Watch Co., Inc.*

■ Under Florida law, however, all automobile dealer agreements are "deemed to be continuing" beyond their stated expiration dates unless:

"the applicant [*i.e.,* ROLLS–ROYCE] has notified the department [the Florida Department of Highway Safety and Motor Vehicles] of the discontinuation or cancellation or a failure to renew the agreement of any of its motor vehicle dealers." Fla.Stat. § 320.641(2) (1981).

This statute sets forth the requirements for notifying a dealer that the dealer agreement will not be renewed:

"(a) An applicant or licensee shall notify the motor vehicle dealer and forward a copy of such notice to the department of the licensee's intention to discontinue, cancel, or fail to renew the franchise agreement of any of its motor vehicle dealers at least 90 days before the effective date thereof, together with the specific grounds for discontinuation, cancellation, or failure to renew of said agreement, if discontinued, canceled, or not renewed." Fla.Stat. § 320.641(1) (1981).

The parties have stipulated to facts that show ROLLS–ROYCE'S June 22, 1983 notice of non-renewal (Defendant's Exhibit A) complied with these requirements. (Stipulated Fact No. 6).

The Florida dealer statute also states: "(3) Any motor vehicle dealer whose franchise agreement is discontinued, canceled, or not renewed may, within such 90-day notice period, file with the department a verified complaint in triplicate for a determination of unfair discontinuation or cancellation. Agreements and certificates of appointment shall continue in effect until final determination by the department of the issues raised in such complaint by the motor vehicle dealer. . . ." Fla.Stat. § 320.641(3) (1981).

The Debtor failed to avail itself of this provision by seeking a determination before the Department of Highway Safety and Motor Vehicles (the "Department") prior to September 30. The Dealer Agreement by its own terms and even as "supplemented" by applicable Florida law, expired on September 30, 1983. The filing of the Chapter 11 petition on July 27, 1983, does not change that result.

The Debtor suggests that the "automatic stay" of section 362 of the Code extended the term of the Dealer Agreement or prevented it from expiring on September 30. The only provision of section 362 relevant to that contention states:

"Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

\* \* \* \* \* \*

"(3) any act to obtain possession of property of the estate or of property from the estate . . . ." 11 U.S.C. § 362(a)(3).

As of the Filing Date, the Debtor's property in the Dealer Agreement was limited to contractual rights existing through and until September 30. No further "act" was required for the Dealer Agreement to expire on that date, and no action was taken by ROLLS–ROYCE after the Filing Date that would constitute in any way a violation of Section 362. Also prior to the Filing

Date, ROLLS–ROYCE had already done all that was required or permitted under Florida law to allow its relationship with the Debtor to expire. There was nothing further that it had to do or could do except await the oncoming expiration date of the Dealer Agreement.

 Although the automatic stay is a broad and powerful provision, it does not stay the passage of time. *In re Beck,* 5 B.R. 169, 170 (Bkrtcy.D.Hawaii 1980). A contractual right of termination survives the filing of a petition in bankruptcy. *Thompson v. Texas Mexican R. Co.,* 328 U.S. 134, 141, 66 S.Ct. 937, 942–43, 90 L.Ed. 1132 (1946). As the Fifth Circuit stated in *Schokbeton Industries, Inc. v. Schokbeton Products Corp.,* 466 F.2d 171, 176 (5th Cir. 1972), once the right under an agreement has "evaporated" by written notice of termination,

> "neither the mere filing of the arrangement petition nor the referee's order purporting to extend the grace period for the cure of the default, nor a mystical combination of both could effect their recondensation."

Although both *Thompson* and *Schockbeton* are pre-Code cases, their reasoning has been applied in recent Code cases on facts virtually indistinguishable from those here. *In re Anne Cara Oil Co., Inc.,* 32 B.R. 643 (Bkrtcy.D.Mass.1983); *In re New Media Irjax, Inc.,* 19 B.R. 199 (Bkrtcy.M.D.Fla.1982); *In re Beck,* 5 B.R. 169 (Bkrtcy.D.Haw.1980).

In *In re Beck,* the Court summarized the rights of a franchisee, Beck, who had received 60-day's notice of termination effective June 14, 1980, and who filed under Chapter 11 between the notice and the effective date:

> "The Automatic Stay provisions of Section 362 did not in any way prevent expiration of the License Agreements on June 14, 1980 in accordance with their terms. Prior to the filing of the Chapter 11 petition by Beck, Penny gave notice of termination and no further action was necessary to result in the expiration of the License Agreements. The Automatic Stay provision only protects a Debtor's property interest, and at best any property interest of the Debtor under the License Agreements expired as of June 14, 1980." 5 B.R. at 169.

The same conclusion applies here. The Debtor's property interest unconditionally expired as of September 30, 1983.[1]

The cases that have considered termination or non-renewal of franchise agreements under the Code have viewed them as executory contracts and therefore governed by section § 365 of the Code. Those cases have reasoned that where notice of termination or non-renewal has been given, the debtor may assume the contract for its duration until the expiration date, but that after expiration, there is nothing left to assume. *In re Anne Cara Oil Co., supra; In re Moody,* 31 B.R. 216 (Bkrtcy.W.D.Wis. 1983); *In re New Media Irjax, Inc.,* 19 B.R. 199 (Bkrtcy.M.D.Fla.1982); *In re Fontaine Janitorial Supply Service, Inc.,* 17 B.R. 322 (Bkrtcy.M.D.Fla.1982).

 In this action, also, there is nothing left to assume because the Dealer Agreement has expired.[2] However great this Court's powers are to preserve a debtor's

---

1. This is not a case like *In re R.S. Pinellas Motel Partnership,* 2 B.R. 113 (Bkrtcy.M.D.Fla. 1979) in which the notice of termination of a franchise agreement was held to have been given *after* the filing of the petition. *See Pinellas Motel,* 2 B.R. at 117.

2. Although that is the only conclusion that flows from the stipulated facts, it is fair to comment upon the contention raised by the Debtor's counsel at oral argument that the Debtor should be permitted an extension of the Dealer Agreement so as to permit an opportunity to cure defaults and assume the contract under section 365. This argument overlooks the distinction between termination, which is predicated upon default, and expiration of the agreement by its own terms, which does not involve defaults. It is not necessary to reach the issues of default or cure here, since the stipulated facts disclose that the Agreement expired by its own terms under applicable law. If, however, the Court were to reach the default and cure issues, the conclusion would be inescapable, on the uncontroverted facts, that the Debtor committed material breaches of the Dealer Agreement and was given abundant opportunity to cure its breaches. See discussion, *infra,* pp. 14–15.

property interest, this Court cannot enlarge or increase the Debtor's property or rewrite the terms of a contract.

■ Counsel for the Debtor argues that Section 108(a) of the Code extends the expiration date. That section states:

"If applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor may *commence an action,* and such period has not expired before the date of the filing of the petition, the trustee [or debtor in possession] may commence such action only before the later of—
(1) The end of such period, including any suspension of such period occurring on or after the commencement of the case; and
(2) Two years after the order for relief."

The Debtor argues that this provision extends the 90-day period during which the Debtor may seek "a determination of unfair discontinuation" under Fla.Stat. § 320.-641(3). The Debtor then argues that the Dealer Agreement is in turn kept in effect by the provision of Fla.Stat. § 320.641(3) which states that dealer agreements "shall continue in effect until final determination by the department of the issues raised in such complaint."

The Court concludes that section 108(a) does not apply because the right of a dealer to protest to the Department is not an "action" contemplated in section 108(a). Instead, it is section 108(b) that applied in this case. That section states:

"(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the peti-

tion, the trustee may only file, cure, or perform, as the case may be, before the later of—
"(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and
"(2) 60 days after the order for relief."

Section 108(a) extends statutes of limitation on causes of actions which might otherwise expire after the commencement of a bankruptcy case. It is designed to give the debtor time to make a decision whether to start a lawsuit. The debtor is granted a grace period to determine whether his rights, which might be unknown on the Filing Date, are worth pursuing in the courts.

By contrast, section 108(b) of the Code, clearly applicable in this action, concerns specific types of acts that preserve or continue in effect rights that are known to the Debtor and which involve obligations of other parties that have been defined as of the Filing Date.[3]

Here, the act to be performed—the filing of a protest with the Department of Highway Safety and Motor Vehicles—did not involve unknown or uncertain rights, but rights fixed by the Dealer Agreement and by state law. The action to be taken, like the filing of a notice, the exercise of a right of redemption or filing of proofs of loss under an insurance contract, was a responsive, curative act to preserve existing, defined rights. At best, section 108(b) gave the Debtor only until September 25 (60 days from the Filing Date) or September 30 (the date fixed by state law) to seek a determination before the Department. The Debtor failed to do so.

This conclusion is buttressed by the decisions of both the bankruptcy courts and the Florida state courts. In *In re Anne Cara Oil Co., supra,* an oil company gave its franchised dealer a 90-day notice of termi-

---

**3.** *E.g., In re Morgan,* 23 B.R. 700 (Bkrtcy.E.D. Pa.1982) (statutory period within which to redeem real property in a foreclosure proceeding); *In re Intermet Realty Partnership,* 26 B.R. 383 (Bkrtcy.E.D.Pa.1983) (the period within which to make a payment so as to extend an escrow or consummate an executor contract of sale); and *In re Hudson Valley Ambulance Service Inc.,* 11 B.R. 860 (Bkrtcy.S.D.N.Y.1981) (the period within which to file a certificate of readiness in a state court proceeding).

nation pursuant to provisions of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq. ("PMPA"). The PMPA, like the Florida statute here (a) imposes a minimal 90-day period for notice of termination (with which the franchisor had complied), 15 U.S.C. § 2804; and (b) gives the franchisee a cause of action in the United States District Courts, regardless of the amount in controversy, to recover damages and to obtain injunctive relief against termination. 15 U.S.C. § 2805. The debtor in that case failed to seek injunctive relief before expiration of the notice period. The court held the agreement had expired of its own terms and could not be revived. *See also In re Moody,* 31 B.R. 216 (Bkrtcy.W.D.Wis.1982), holding that an expired gasoline dealer agreement could not be revived, even though the PMPA was applicable. Both *Moody* and *Anne Cara* considered the applicability of section 108(b), not 108(a).

██ Moreover, the Florida District Court of Appeal has held that the 90-day notice period during which an automobile dealer may protest non-renewal under Fla.Stats. § 320.641 is a jurisdictional requirement of the Department's power to act; the failure of the dealer to seek a determination during that period leaves the Department "without power to acquire jurisdiction." *Fiat Motors of North America v. Calvin,* 356 So.2d 908 (Fla. DCA 1, 1978).

The court in *Fiat Motors* recognized that the 90-day limitation was more than a mere time limit or statute of limitations:

"Section 320.641(3) provides that the dealer's filing of a verified complaint, without more, stays that licensee's cancellation of a dealer franchise and prevents the granting of another franchise at that location until the merits are determined. The agency's preliminary action in taking unwarranted jurisdiction [i.e., after the 90-days] therefore has immediate and substantial adverse consequences for the licensee, Fiat, for which review after final agency action will not be an adequate remedy."

Whatever other rights the Debtor may have had to "appeal" to the Department, it is clear that the Debtor cannot now change or extend the terms of the Dealer Agreement.

At oral argument, counsel for the Debtor raised certain other contentions that may be dealt with briefly here. These observations, while supportive of the Court's decision, are not necessary to the Court's conclusions of law.

The Court has been mindful of the arguments that the Debtor's new management, which allegedly took over approximately August 15, 1983, was allegedly unaware of the notice of non-renewal and should be given time to sort out the Debtor's affairs and to protest the non-renewal before the Department of Highway Safety and Motor Vehicles. The record discloses, however, that the "new" manager—who in fact was a stockholder of the Debtor three years ago (Defendant's Exhibit C)—anticipated the possibilities of both insolvency and the termination of the Dealer Agreement in April, 1983, long before either of those events had come to pass (see Defendant's Exhibit O). Moreover, the new management had actual knowledge of the notice of non-renewal well before the expiration of the Dealer Agreement and full opportunity to take appropriate steps either before the Department or before this Court (Defendant's Exhibit V, p. 3). Similarly, the contentions that ROLLS–ROYCE acquiesced in the Debtor's conduct or failed to give the Debtor an opportunity to cure are rebutted in full by the record (Defendant's Exhibits E, G, I, J, M, Q, R, T).

For the reasons set forth herein, the Court has concluded that the Dealer Agreement expired by force of its own terms on September 30, 1983, and that neither the automatic stay under section 362 nor section 108(a) of the Code apply to revive or extend it. Accordingly, the Complaint will be dismissed and the restraining order dissolved in accordance with these findings and conclusions.