**Affirmed and Memorandum Opinion filed March 26, 2020.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-18-00438-CV

---

**JUNIOUS R. VALENTINE, Appellant**

**V.**

**FEDERAL INSURANCE COMPANY, Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-78466**

---

## MEMORANDUM OPINION

Appellant Junious R. Valentine obtained a default judgment in federal court against his former employer (the Hospital) for employment discrimination. In this case, Valentine sued the Hospital's insurer, appellee Federal Insurance Company, for breach of contract, Insurance Code violations, and conspiracy. The Harris County district court (the trial court) granted Federal's motion for summary judgment on all of Valentine's claims. Valentine challenges the trial court's summary judgment in six issues. We affirm.

# I.    BACKGROUND

The parties agree that the Hospital held an insurance policy with Federal that covered employment discrimination claims against the Hospital.  The policy was a claims-made-and-reported policy that covered loss from a claim "first made against such Insured during the Policy Period . . . but only if such Employment Claim [was] reported to the Company [i.e., Federal] in writing in the manner and within the time provided in Subsection 12 of this coverage section."  Subsection 12, as amended, provided that as a condition precedent to coverage, the Hospital had to give written notice of an employment claim to Federal "during the Policy Period, or, if applicable, in no event later than . . . 180 days after the end of the Policy Period."  The Policy Period was from November 3, 2013, to November 3, 2014.

During the Policy Period, Valentine filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and then sued the Hospital in a federal district court.  On February 27, 2015, the Hospital petitioned for Chapter 11 bankruptcy, and the federal district court subsequently dismissed Valentine's suit pursuant to the automatic stay.  On October 5, 2015, the bankruptcy court signed an agreed order lifting the automatic stay to permit Valentine to prosecute his case in the federal district court.  The bankruptcy court ordered that "the automatic stay in this action is modified to permit [Valentine] to continue to prosecute the Lawsuit, provided that any settlement or judgment related to the Lawsuit shall be paid from [the Hospital's] applicable insurance policies."

The federal district court reinstated Valentine's case, but less than a month later the Hospital filed a "notice of denial of insurance coverage and reinstatement of stay," contending that the Hospital had been notified by Federal that insurance

2

coverage for Valentine's claim had been denied. The Hospital contended that the federal district court's prior order "dismissing and automatically staying this case should be reinstated" because there was no insurance coverage for Valentine's claim. The Hospital attached Federal's denial-of-coverage letter, which stated that coverage was denied because Federal did not report Valentine's claim until October 9, 2015—outside the 180-day reporting period following the expiration of the Policy Period.

The federal district court ultimately rendered a default judgment awarding Valentine damages, attorney's fees, and costs totaling $87,598. Valentine then sued Federal in a Harris County district court, asserting claims for breach of contract as a third-party beneficiary, violation of the Insurance Code, and conspiracy. In his live pleading, Valentine alleged that Federal breached the insurance policy by refusing to pay the federal court judgment. He alleged that Federal engaged in an unfair and deceptive course of conduct regarding the availability of coverage, failed to promptly pay the federal court judgment, and misrepresented a material fact of a policy provision relating to coverage and notice of the claim. Valentine sought damages for policy proceeds in the amount prescribed by the federal district court judgment and mental anguish damages due to Federal's "wrongful conduct in denying coverage and delaying payment."

Federal filed a traditional motion for summary judgment, and Valentine filed a response. Both parties attached evidence to support the procedural facts described above. Federal also filed a declaration from its adjuster on the Valentine matter. She testified that Federal's "claim file" included Valentine's charge of discrimination, the EEOC's notice of charge, and Valentine's complaint from the federal district court. She testified, "Federal did not receive notice of Valentine's

claim from anyone before October 9, 2015." She attached to her declaration the October 9, 2015 email notice.

Among other evidence, Valentine filed invoices from the law firm of Littler Mendelson P.C., which are dated within the Policy Period, describe the client as Federal, and describe the insured as the Hospital. The "claimant name" and some other details are redacted. Valentine also filed an email dated September 30, 2015, sent from the Hospital's purported bankruptcy attorney at the law firm of Porter Hedges LLP to Valentine's attorney, stating that the Hospital had "told us repeatedly that there is an insurance policy that would cover this, but they have been unable to locate it. They have requested a copy from the insurance company but are still waiting."

In its motion for summary judgment, Federal argued that it was entitled to judgment on Valentine's claims because there was no coverage under the terms of the policy due to the Hospital's failure to provide notice within 180 days of the Policy Period. Valentine responded that the motion should be denied because (1) there was a genuine issue of material fact regarding when the Hospital received notice; (2) the doctrine of collateral estoppel barred Federal's attempt to relitigate untimely notice; (3) the Bankruptcy Code and policy terms barred Federal's contention regarding untimely notice; (4) Federal had not established prejudice from the untimely notice; (5) Valentine could assert Insurance Code violations as a third-party-beneficiary of the policy; and (6) Federal did not move for summary judgment on the conspiracy claim. The trial court granted Federal's motion for summary judgment and ordered that Valentine take nothing on his claims against Federal. On appeal Valentine raises these same arguments.

4

## II.    STANDARDS OF REVIEW

We review a grant of a motion for summary judgment de novo. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). The party moving for a traditional summary judgment has the initial burden to show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Lujan v. Navistar Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant satisfies this burden, then the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Id.* We review the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable fact finders could, and disregarding contrary evidence unless reasonable fact finders could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

The interpretation of an unambiguous contract is a question of law that we review de novo using well-settled contract-construction principles. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). We presume that parties intend what the words in their contract say, and we interpret contract language according to its plain, ordinary, and generally accepted meaning unless the contract directs otherwise. *Id.* at 763–64. Similarly, statutory construction is a question of law and reviewed de novo. *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016). Our primary objective is to give effect to the Legislature's intent, which we ascertain from the plain meaning of the words used in the statute if possible. *Id.*

## III.    BREACH OF CONTRACT

In his first four issues, Valentine challenges the trial court's summary judgment on the breach of contract claim. We address his issues in the order presented in his brief.

## A.    No Genuine Issue of Material Fact Regarding Notice

In his first issue, Valentine contends that there is a genuine issue of material fact regarding when the Hospital received notice.  Federal adduced evidence that notice was due no later than May 2, 2015, but Federal did not receive notice until October 9, 2015.  Valentine focuses on three categories of evidence that he suggests raise a fact issue about the date Federal received notice of the claim: (1) the adjuster's declaration; (2) the Porter Hedges email; and (3) the Littler Mendelson billing invoices.

First, Valentine contends that there are "contradictory facts" alleged in the adjuster's declaration.   Valentine suggests that the adjuster's testimony that Valentine's EEOC charge and complaint were "in Federal's claim file," coupled with the adjuster's testimony that the Hospital sent the same documents to Federal on October 9, 2015, means that Federal must have had notice of the claim before October 9, 2015.  But the adjuster did not testify that Federal had the documents in its "claim file" before October 9, 2015.  And the adjuster testified unequivocally that Federal did not receive notice of the claim before receiving an email on October 9, 2015.  The declaration does not raise conflicting inferences regarding the date of notice.

Second, Valentine contends that the Porter Hedges email is more than a scintilla of evidence that Federal had notice of Valentine's claim before October 9, 2015.  But the email indicated only that the Hospital believed it had insurance coverage for the claim and had asked Federal for a copy of the policy.  This evidence does not transcend mere suspicion; any inference that Federal had been notified of Valentine's claim would be merely a guess.  *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (cannot raise a genuine issue of

6

material fact based on evidence so slight as to make any inference a guess; evidence must transcend mere suspicion).

Finally, Valentine contends that the Littler Mendelson invoices show that Littler was working with Federal on multiple employment-related matters for the Hospital in the summer of 2014 through March 2015 at the same time it was defending the Hospital in the federal district court suit. Valentine suggests it is a reasonable inference from this evidence that Federal had been notified of Valentine's claim. However, the invoices do not refer to Valentine, and there is no evidence to suggest that the invoices related to the Valentine matter rather than some other claimant. Valentine's proposed inference is not reasonable because it would require the fact finder to guess to reach a conclusion. *See Suarez v. City of Tex. City*, 465 S.W.3d 623, 634 (Tex. 2015). The inference is based on mere suspicion. *See id.*

None of this evidence, considered individually or in total, gives rise to a reasonable inference that Federal had been notified of Valentine's claim before October 9, 2015, let alone within 180 days of the Policy Period. Because Federal presented undisputed evidence that Valentine's claim was not a covered loss, Federal did not breach the policy by denying coverage.

Valentine's first issue is overruled.

## B.     No Collateral Estoppel

In his second issue, Valentine contends that collateral estoppel bars Federal's attempt to relitigate the issue of untimely notice because Federal is making the same argument regarding lack of coverage that the Hospital advanced in the federal district court suit, and because Federal and the Hospital were in privity. *See Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105,

7

110–11 (5th Cir. 2010) ("An insurer in a coverage case will be barred from re-litigating a particular issue from the underlying liability case if: (1) the issue raised in the coverage suit was raised and determined in the liability suit; (2) the issue determined in the liability suit was essential to the judgment in the liability suit; and (3) the necessary requirement of privity exists between the insurer and the insured."); *see also John G. & Marie Stella Kenedy Mem. Found. v Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002).

For purposes of collateral estoppel, "An insurer and its insured do not share privity when they have a conflict of interest about the subject matter of the litigation." *Williamson v. State Farm Lloyds*, 76 S.W.3d 64, 67–68 (Tex. App.—Houston [14th Dist.] 2002, no pet.). "When an insurer and its insured take conflicting positions on the issue of coverage, they are not in privity." *Id.* at 68. When there exists a conflict of interest in connection with the issue of coverage, the insurer's interests are not the same as the insured's, so the insurer is not in privity with the insured. *See State Farm Lloyds v. C.M.W.*, 53 S.W.3d 877, 886–87 (Tex. App.—Dallas 2001, pet. denied) (no privity when insurer provided a defense with reservation of right to contest coverage of the claims).

The evidence that Federal denied coverage to the Hospital is sufficient to overcome Valentine's assertion of collateral estoppel—Federal and the Hospital were not in privity. *See id.* Valentine contends that the Hospital and Federal agreed there was no coverage, so they were in privity. Even if an insurer's denial of coverage does not necessarily create a conflict for purposes of collateral estoppel, *but see id.*, the Hospital's "notice of denial of insurance coverage and reinstatement of stay" informed the federal district court that coverage had been denied, not that the Hospital agreed with Federal's decision to deny coverage.

8

Moreover, nothing in this record indicates that the federal district court made a ruling on the issue of notice. The record contains no order denying reinstatement of the stay or any finding of fact on the issue of notice. Thus, nothing in this record indicates that the issue of notice was "determined" in the liability suit. And, whether the Hospital gave written notice to Federal within the time period prescribed by the policy was not essential to the federal district court's liability judgment. *See Emp'rs Cas. Co. v. Block*, 744 S.W.2d 940, 943 (Tex. 1988) (insurer could contest coverage because recitation in judgment of liability suit that property damage was sustained as a result of an occurrence on a particular date was not essential to determining the insured's liability), *overruled on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996). Thus, Federal is not barred by the doctrine of collateral estoppel from litigating the issue of coverage in this case.

Valentine's second issue is overruled.

## C. No Tolling Under Bankruptcy Code or Policy

In his third issue, Valentine contends that (1) the imposition of the automatic stay under Section 362 of the United States Bankruptcy Code (the Code) "suspend[ed] any period to give notice under Federal Insurance's insurance policy"; (2) the notice period under the policy was "tolled until the stay was lifted" under Section 108 of the Code; and (3) the policy "acknowledges the effects of bankruptcy."

### 1. Automatic Stay

The filing of a bankruptcy petition automatically stays, among other conduct, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

The automatic stay prevents the initiation and continuation of lawsuits or other actions against the debtor. *See id.* § 362(a)(1). The automatic stay encompasses a "wide swath of legal actions, including litigation, lien enforcement, and administrative proceedings, that could affect or interfere with the property of the bankrupt's estate." *Checkers Drive-In Rests., Inc. v. Comm'r of Patents & Trademarks*, 51 F.3d 1078, 1080 (D.C. Cir. 1995). Courts have held that insurance policies are "property of the estate," so a right to cancel an insurance policy can be automatically stayed by the filing of a bankruptcy petition. *See In re Minoco Grp. of Cos.*, 799 F.2d 517, 519 (9th Cir. 1986) (citing Eric W. Lam, *Cancellation of Insurance: Bankruptcy Automatic Stay Implications*, 59 Am. Bankr. L.J. 267 (1985)).

The automatic stay, however, does not stop the passage of time. *See In re Lauderdale Motorcar Corp.*, 35 B.R. 544, 548 (Bankr. S.D. Fla. 1983) (citing *In re Beck*, 5 B.R. 169, 170 (Bankr. D. Haw. 1980)). Section 362's "prohibition against actions taken to obtain possession of the estate's property does not affect the tolling of time." *Ctys. Contracting & Const. Co. v. Const. Life Ins. Co.*, 855 F.2d 1054, 1058–59 (3d Cir. 1988). Although the automatic stay prohibits certain affirmative conduct, it does not toll the running of statutory time periods that would result in the transfer of property to a creditor. *See In re Maanum*, 828 F.2d 459, 460 (8th Cir. 1987); *see also Ctys. Contracting*, 855 F.2d at 1059 (automatic stay did not prohibit lapse of insurance policy under contractual and statutory grace period).

Valentine cites no authority to suggest that the automatic stay tolls the time period for reporting a claim under an insurance policy, and we have found none. Valentine appears to argue that because his own claim against the Hospital was stayed, the Hospital's contractual duty to notify Federal of the claim, as a condition

precedent to coverage, was also stayed. Again, no case law supports this contention. The policy contradicts Valentine's contention by providing that the bankruptcy of an insured shall not "deprive the Company of its rights or defenses under this policy."

This case does not involve any affirmative conduct by Federal against the Hospital, but rather the mere passage of time. We hold that the automatic stay did not prohibit or toll the notice period in the insurance policy.

## 2. *Section 108*

Generally, Section 108 of the Code allows for the extension of time for debtors and claimants to do certain things after the debtor has filed a bankruptcy petition or the stay has been lifted. Valentine refers to the following subsections:

> (a) If . . . an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

> (b) Except as provided in subsection (a) of this section, if . . . an agreement fixes a period within which the debtor . . . may file any . . . notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief.

> (c) . . . [I]f . . . an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of

11

the stay . . . with respect to such claim.

The commencement of a voluntary bankruptcy proceeding, as here, constitutes an "order for relief." *See* 11 U.S.C. § 301.

As several of the cases cited above suggest, the tolling of statutory or contractual deadlines may arise under Section 108(b) of the Code. *See Ctys Contracting*, 855 F.2d at 1059; *In re Lauderdale Motorcar*, 35 B.R. at 549. But under Section 108(b), notice of the claim in this case was still due no later than May 2, 2015. Section 108(b) does not help Valentine, and Valentine expressly disclaimed reliance on Section 108(b) to the trial court.

Section 108(a) refers to a debtor or trustee commencing an "action," an undefined term commonly understood to mean a lawsuit. *See In re Sims Bros. Builders, Inc.*, 35 B.R. 149, 150–51 (Bankr. S.D. Ohio 1983); *see also In re Lauderdale Motorcar*, 35 B.R. at 549. Section 108(a) is inapplicable because the Hospital's contractual duty to notify Federal of claims as a condition precedent to coverage is not an "action" within the meaning of the statute. *See In re Lauderdale Motorcar*, 35 B.R. at 549 (debtor's statutory deadline for seeking determination from state governing body regarding discontinuation of contract was not tolled by Section 108(a) because debtor's right to protest was not an "action" by the debtor); *see also In re Sims Bros.*, 35 B.R. at 150–51.

Section 108(c) refers to the expiration of periods for commencing or continuing a civil action ***against*** the debtor. Although Section 108(c) could have operated to extend limitations for Valentine's filing of a civil action against the Hospital, Section 108(c) did not toll the time period for notifying Federal about an Employment Claim, as defined in the policy.

12

### 3. Contractual Language

Valentine contends that some contractual language is rendered superfluous if the automatic stay does not result in the tolling of the notice provision. Valentine contends that a clause referencing bankruptcy is "intended to protect the insured while it is in bankruptcy under precisely the scenario presented here." Valentine purports to quote the policy while arguing, "Federal Insurance's own policy explicitly states that bankruptcy does 'not deprive the [insured] of its rights or defenses under the policy'" (alteration by Valentine). As quoted above, the clause refers to "Company," i.e., Federal, in the place where Valentine has substituted "insured." Thus, the clause protects *Federal's* defense of a failure of a condition precedent regarding notice. Nothing in the policy suggests that the notice period should be tolled during bankruptcy.

Valentine's third issue is overruled.

## D.    No Requirement to Show Prejudice

In his fourth issue, Valentine contends that to avoid coverage based on the Hospital's untimely notice, Federal was required to show prejudice under Texas law and the policy.

In *Prodigy Communications Corp. v. Agricultural Excess & Surplus Insurance Co.*, the Supreme Court of Texas held that, for a claims-made-and-reported policy, "when an insured gives notice of a claim *within* the policy period or other specified reporting period, the insurer must show that the insured's noncompliance with the policy's 'as soon as practicable' notice provision prejudiced the insurer before it may deny coverage." 288 S.W.3d 374, 382 (Tex. 2009) (emphasis added). In reaching this conclusion, the court reiterated the

importance that a claim be reported within the time required for reporting. *See id.* at 380–82. The court explained:

> Because the requirement that a claim be reported to the insurer during the policy period or within a specific number of days thereafter is considered essential to coverage under a claims-made-and-reported policy, most courts have found that an insurer need not demonstrate prejudice to deny coverage when an insured does not give notice of a claim within the policy's specified time frame.

*Id.* at 381 (collecting cases). The court agreed with the analysis of two other courts that had held prejudice was not required if the insured failed to report a claim, under a claims-made policy, during the policy period or other applicable reporting period. *See id.* at 381–82 (citing *T.H.E. Ins. Co. v. P.T.P. Inc.*, 628 A.2d 223 (Md. 1993) and *Chas. T. Main, Inc. v. Fireman's Fund. Ins. Co.*, 551 N.E.2d 28 (Mass. 1990)).

This case involves a claims-made-and-reported policy, so Valentine's authorities concerning other types of policies are inapplicable. Federal adduced undisputed evidence that Federal did not receive notice of Valentine's claim within the Policy Period or the additional 180-day reporting period. Timely notice under this policy is essential to coverage. *See id.* at 381. Because there was no timely notice, there is no coverage, regardless of any showing of prejudice. *See id.* at 381–82; *see also Nicholas Petroleum, Inc. v. Mid-Continent Cas. Co.*, No. 05-13-01106-CV, 2015 WL 4456185, at *6 (Tex. App.—Dallas July 21, 2015, no pet.) (mem. op.).

Valentine contends that the policy "explicitly provides that, absent a showing of prejudice, it may not deny coverage." His reliance on other clauses of the policy is inapposite. He refers to the following clauses without explaining how these clauses require a showing of prejudice for untimely notice:

- Under the policy's "Defense and Settlement" section, "The Insureds agree to provide the Company with all information, assistance and cooperation which the Company reasonably requires and agree that in the event of a Claim the Insureds will do nothing that could prejudice the Company's position or its potential or actual rights of recovery."

- "With respect to the reporting of any Claim under this coverage section, it is agreed that in determining whether the reporting of such Claim has been timely made, the Company shall make such determination by applying the law of any jurisdiction which has a substantial relationship to the Insureds, the Company, this Policy, or the Claim and which is most favorable to such determination of timeliness."

Neither of these clauses requires a showing of prejudice regarding untimely notice of a claim.

Valentine's fourth issue is overruled.

## E. No Error to Grant Summary Judgment on Breach of Contract

Having overruled Valentine's first four issues, we hold that the trial court did not err by rendering a summary judgment on Valentine's breach of contract claim.

## IV. INSURANCE CODE

In his fifth issue, Valentine contends that the trial court erred by granting summary judgment on his Insurance Code claim because (1) he is a third-party beneficiary of the policy as a judgment-creditor; and (2) he is a "claimant" under the Insurance Code's statutory definition.

Although an insured's judgment-creditor may be considered a third-party beneficiary sufficient to bring suit against an insurer for policy benefits, *see P.G. Bell Co. v. U.S. Fid. & Guar. Co.*, 853 S.W.2d 187, 189 (Tex. App.—Corpus

Christi 1993, no writ), Valentine cites no case upholding a third-party's claim based on violations of the Insurance Code, *see Reule v. Colony Ins. Co.*, 407 S.W.3d 402, 411–14 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (third-party claimant lacked standing for violation of unfair settlement practice under Section 541.060 of the Insurance Code). Indeed, to be a "claimant" under the Insurance Code, the party must make a "claim," which is defined as a "first-party claim that . . . is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract." Valentine is neither a first-party claimant nor a beneficiary named in the policy. *See Reule*, 407 S.W.3d at 411–14 (plaintiff was a third-party claimant even though she paid premiums and was entitled to liability coverage under the policy).

Even assuming Valentine could bring a claim under the Insurance Code as a third-party beneficiary, "[a]n insured cannot recover any damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490–501 (Tex. 2018) (discussing exceptions to the general rule that an insured cannot recover policy benefits if the insured does not have a right to benefits under the policy). This rule is based on the statutory requirement of causation. *See id.* at 490, 499–500.

In its summary judgment motion, Federal relied primarily on *Menchaca*. Valentine does not refer to *Menchaca*, and he does not refer to any evidence of an injury independent of his purported right to receive benefits under the policy. In his petition, he sought only policy benefits and damages dependent on a right to benefits. Because the trial court did not err in granting summary judgment on Valentine's breach of contract claim, and Valentine alleges no injury independent

16

of a right to policy benefits, the trial court did not err by granting summary judgment on the Insurance Code claim.

Appellant's fifth issue is overruled.

## V. CONSPIRACY

In his fifth issue, appellant contends that the trial court erred by granting summary judgment on the conspiracy claim because Federal did not move for a summary judgment on the claim. *See, e.g.*, *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011) (observing that a trial court errs by granting a summary judgment on a claim not expressly presented in the written motion).

This type of error, however, is not reversible unless the error probably caused the rendition of an improper judgment or prevented the appellant from properly presenting the case to this court. *See id.* at 297–98 (citing Tex. R. App. P. 44.1(a)). "[T]he error is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *Id.* at 298. Reversal is not required if the "unaddressed claim is derivative of the addressed claim, and the movant proved its entitlement to summary judgment on the addressed claim." *Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.), *quoted in Magee*, 347 S.W.3d at 297.

Conspiracy is a theory of derivative liability, not an independent tort. *See Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142–43 (Tex. 2019). Thus, assuming without deciding that the trial court erred, any error in this case was harmless because the trial court properly granted summary judgment on the underlying claims. *See Macias v. Gomez*, No. 13-14-00139-CV, 2014 WL 7011372, at *4–5 (Tex. App.—Corpus Christi Dec. 11, 2014, no pet.) (mem. op.); *see also Zarzana v. Ashley*, 218 S.W.3d 152, 162 (Tex. App.—Houston [14th

Dist.] 2007, pet. struck) (motion for summary judgment was sufficiently broad to encompass later-pleaded conspiracy claim because the motion addressed and negated the only underlying claim).

Valentine's sixth issue is overruled.

## VI. CONCLUSION

Having overruled all of Valentine's issues, we affirm the trial court's judgment.

/s/ Ken Wise
   Justice

Panel consists of Justices Wise, Zimmerer, and Spain.